■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL PECK, Appellant. [596 NYS2d 209] —Mercure, J. Appeal from a judgment of the County Court of Chemung County (Castellino, J.), rendered June 26, 1991, upon a verdict convicting defendant of the crime of manslaughter in the second degree.

Defendant, convicted of manslaughter in the second degree in connection with the death of his live-in girlfriend's 22-month-old daughter, now appeals. Initially, we reject defendant's attack on the sufficiency of the trial evidence. The medical experts who testified at trial were united in their opinion that the cause of death was an accumulation of blood in the victim's pericardium from a 0.6-inch tear in her heart, caused by a severe blunt trauma to her chest within eight hours prior to her death. The testimony of the child's mother

---

2. The Schappert letter dated January 31, 1983 addressed and explained the concerns that Monroe had voiced to Houlihan.

and a disinterested apartment complex maintenance man established that the child was alert, lively and well at approximately 10:00 A.M. on November 16, 1990. The child was left alone with defendant from approximately 10:15 A.M. until noon on that day and, at the time of the mother's return, the child was barely conscious and in obvious distress. The child was rushed to the hospital and died at 2:40 P.M. Rather than provide a plausible explanation for the child's injuries, defendant instructed the mother not to tell anyone that he had been alone with the child and related differing stories to the mother, hospital personnel and police officers as to how the child had accidentally struck her head. Notably, although the child had injured her head in a fall a few days earlier, that injury had no relationship to her death. In our view, the circumstantial evidence presented to the jury, including the existence of a series of circular bruises on the child's chest, logically supports the inference that defendant recklessly punched the child in the chest with sufficient force to cause her death and excludes to a moral certainty every other reasonable hypothesis (see, People v Ford, 66 NY2d 428, 439-440; People v Link, 161 AD2d 839, 840-841, lv denied 76 NY2d 941).

Defendant's remaining contentions lack merit and warrant little discussion. Defendant made no objection to the prosecutor's frequent use of the word "we" during the People's summation (in such phrases as "How do we get the truth in this case?") and, in response to an objection voiced at the conclusion of the summation, County Court gave an appropriate curative instruction. On the whole, the People's summation did not deprive defendant of a fair trial (see, People v White, 173 AD2d 897, lv denied 78 NY2d 976). The fact that one of the jurors became aware that defendant had approached her son, a correction officer at the Chemung County Jail, and had a conversation with him, did not require her disqualification. The record demonstrates that the juror was not advised of the substance of the conversation, and repeated questioning by County Court established her ability to be fair and impartial (cf., People v Nicolas, 171 AD2d 817, 818-819). Finally, considering the nature of defendant's acts, the prison sentence of 5 to 15 years that was imposed is by no means harsh and excessive (see, People v Fitzgibbon, 166 AD2d 745, 748, lv denied 77 NY2d 838).

Mikoll, J. P., Yesawich Jr., Crew III and Harvey, JJ., concur. Ordered that the judgment is affirmed.