■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHRISTINE A. LANE, Appellant. [600 NYS2d 848] —Mikoll, J. P. Appeal from a judgment of the County Court of Tompkins County (Friedlander, J.), rendered January 16, 1991, upon a verdict convicting defendant of the crimes of manslaughter in the second degree, obstructing governmental administration in the second degree and falsely reporting an incident in the third degree.

At approximately 8:00 A.M. on February 2, 1990, defendant telephoned the Tompkins County Sheriff's Department and reported that her 23-month-old daughter, Aliza Bush (hereinafter the victim), was missing. Defendant first informed investigators that she had taken the victim out for a walk with her and her dog that morning. She stated that she returned to the apartment that she shared with the victim to use the bathroom. She claimed that after using the bathroom she went back to the living room and discovered that the victim was missing.

The Sheriff's Department, with the assistance of approximately 200 forest rangers and firefighters, then began a massive search of the wooded area surrounding defendant's apartment. The search proved unsuccessful after three days and authorities then requested that defendant, the victim's father (Gregory Bush) and Kevin Dexter submit to polygraph tests which apparently were inconclusive.

After a second polygraph test was administered to defendant on February 15, 1990, she changed her story and reported to the examiner that at about 4:00 A.M. on February 2,

1990 she had gone into the victim's bedroom after falling asleep in the living room and found the victim face down in her crib tangled in her blankets. Defendant said that the victim was cold, stiff and not breathing, and that her efforts to resuscitate the victim were fruitless. She also tried to call an ambulance but hung up, fearing that she would not be believed. Thereafter, defendant put the victim's body in plastic bags and buried it in the nearby woods under a pile of branches. Defendant next led authorities to the victim's body and was thereafter arrested.

Defendant was indicted in March 1990 and charged with two counts of murder in the second degree, obstructing governmental administration in the second degree and falsely reporting an incident in the third degree. Following a jury trial, defendant was acquitted of the murder charges but was convicted of the lesser included offense of manslaughter in the second degree. She was also convicted of the remaining two charges. County Court sentenced her to an indeterminate prison term of 5 to 15 years on the manslaughter in the second degree conviction, one year on the obstructing governmental administration in the second degree conviction and three months on the falsely reporting an incident in the third degree conviction. The sentences were to run concurrently.

Upon review of the record and the applicable law, we find defendant's multiple arguments for reversal unpersuasive. The judgment should therefore be affirmed.

Defendant contends that her manslaughter conviction was not supported by legally sufficient evidence and was against the weight of the trial evidence because the People's evidence was insufficient to establish that she recklessly caused the victim's death. Defendant maintains that this case is wholly circumstantial and that the People's proof of defendant's opportunity to commit the crime and of her consciousness of guilt did not demonstrate that she caused the victim's death. We disagree. The record contains sufficient expert medical evidence and other proof to establish that the cause of the victim's death was asphyxia from suffocation, and that defendant caused the asphyxia and resulting death of the victim. The victim's paternal grandfather, Chauncy Bush, testified that he arrived at defendant's apartment at about 8:00 P.M. on February 1, 1990, played with the victim and left the apartment at about 8:30 P.M. He testified that the victim was in excellent health and that defendant was the only person there with the victim that night. The People also produced defendant's own statements and other evidence indicating that

defendant hid the victim's body, made the false report, mailed one of the victim's mittens to herself after reporting the victim missing and made a statement regarding the victim's conduct indicating a consciousness of guilt *(see, People v Craver,* 191 AD2d 817). The People met their burden of proof *(see, People v Giuliano,* 65 NY2d 766, 767-768; *People v Marin,* 65 NY2d 741, 742; *see also, People v Peck,* 192 AD2d 746; *People v Stanley,* 135 AD2d 910).

Furthermore, weighing the relative probative force of the testimony and giving deference to the verdict of the jury *(see, People v Bleakley,* 69 NY2d 490, 495), the verdict was not against the weight of the evidence. The People's expert testimony adequately refuted defendant's explanation of the victim's death by indicating that it was not medically possible for the victim to have died by becoming entangled in her blankets. The testimony of the sole defense expert that the death was the result of a form of anaphylactic shock created only a credibility question for resolution by the jury *(see, e.g., People v Landfair,* 191 AD2d 825, 827).

Defendant's argument that she was deprived of her right to present a defense by an insufficient allocation of funds to retain expert defense witnesses is without merit. An indigent criminal defendant has a right to have funds allocated for the retention of expert witnesses upon a showing of necessity and extraordinary circumstances *(see,* County Law § 722-c; *People v Gallow,* 171 AD2d 1061, 1062, *lv denied* 77 NY2d 995). The award is discretionary *(see, Johnson v Harris,* 682 F2d 49, 50-51, *cert denied* 459 US 1041; *People v Brown,* 136 AD2d 1, *lv denied* 72 NY2d 857, *cert denied* 488 US 897).

County Court's allocation of funds was not an abuse of discretion in the circumstances of this case and did not deprive defendant of her right to present a defense. An indigent's right to an expert in certain situations does not include the right to have any expert of her choice *(see, Ake v Oklahoma,* 470 US 68, 74). Defendant did not request an adjournment of the trial to obtain, at a reasonable cost, an expert other than Bennett Derby, whose fee was somewhat exorbitant. Defendant had already spent $3,000 of a $4,000 allocation to obtain the services of one nontestifying expert witness.

We reject defendant's claim that the admission of the People's expert medical testimony was error because the People's experts all based their opinions on the observations and opinions of Humphrey Germaniuk, an Assistant Medical Ex-

aminer for Onondaga County, and his testimony was inadmissible because it was based on impermissibly obtained information. Two statements were involved in Germaniuk's formation of his opinion. In the first statement, defendant told authorities that there were sheets, pillows and blankets in the crib on the night of the victim's death. This statement did not mention plastic bags and, in order to clear up that point, authorities questioned her further. In the second statement concerning what was in the crib, defendant told authorities that there were no plastic bags in the crib. This second statement was ruled to be inadmissible because it was obtained in violation of her right to counsel.

County Court, in response to a defense motion, held an *in limine* hearing outside the presence of the jury to ascertain the extent of Germaniuk's reliance on the impermissible statement in arriving at his opinion that the cause of the victim's death was homicide. Germaniuk indicated that the presence or absence of plastic bags in the crib was significant in forming his opinion. He further indicated that while defendant's initial statement was significant in arriving at his opinion, the absence of the information in her second statement would make him less certain about his conclusion. Defendant's initial description was an independent source for Germaniuk's conclusion and her second statement only affected the level of his certainty.

Germaniuk testified that his conclusion was based on the autopsy that he performed and observations of the victim, and he set forth the particular facts he emphasized. The jury was made aware from his testimony of the facts on which Germaniuk's opinion was based and could fully evaluate his opinion *(see, People v Jones,* 73 NY2d 427, 430; *cf., People v Miller,* 57 AD2d 668). The information in defendant's impermissible second statement was never before the jury. Thus, County Court properly concluded that Germaniuk had a basis for his expert opinion and could give his opinion at trial as to the cause of the victim's death.

Defendant's claim that Germaniuk's opinion was not based on the requisite degree of certainty is without merit. Germaniuk testified that his opinion was founded on a reasonable degree of medical certainty *(see, Mattot v Ward,* 48 NY2d 455, 461; *People v Forsha,* 151 AD2d 875, 876-877, *lv denied* 74 NY2d 809) and the fact that he wavered in that certainty at the *in limine* hearing went not to the admissibility of his testimony but to its weight.

Defendant's claim that she was impermissibly prejudiced by

Germaniuk's testimony that he put one of the pillows found in defendant's apartment to his face and found that he could breathe through it is similarly without merit. There was a proper foundation laid for the admission of the pillow into evidence, to which defendant did not object, through testimony that it was found in defendant's bed and may have been in the victim's crib at the time of her death *(see, e.g., People v Early,* 191 AD2d 807).

We also reject defendant's contention that the admission of further expert testimony following Germaniuk's testimony was an abuse of discretion because it usurped the fact-finding role from the jury and was improper bolstering and impeachment of defendant's credibility prior to her testifying. The testimony relating to the fields of pathology, neuropathology and pediatrics was properly admitted by County Court in the exercise of its discretion *(see, People v Cronin,* 60 NY2d 430, 433). The expert testimony was necessary to assist the jury in resolving the cause of death issue *(see, People v Bennett,* 169 AD2d 369, *affd* 79 NY2d 464). These experts were of the opinion that it was not medically probable that a child of the victim's stage of development could choke or suffocate by becoming entangled in blankets, as defendant's statements suggested. Thus, the evidence was relevant to the issues and not merely improper bolstering *(see, People v Alvino,* 71 NY2d 233, 245).

Defendant's claims that she was denied a fair trial by certain evidentiary rulings and by an allegedly improper circumstantial evidence charge have been considered and found unpersuasive.

Yesawich Jr., Levine and Crew III, JJ., concur. Ordered that the judgment is affirmed.