(June 25, 2009)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MATTHEW GRAGNANO, Appellant. [—— NYS2d ——]—

Spain, J. Appeal from a judgment of the County Court of Rensselaer County (McGrath, J.), rendered April 12, 2007, upon a verdict convicting defendant of the crimes of assault in the second degree, criminal possession of a weapon in the third degree, criminal contempt in the first degree, criminal mischief in the fourth degree, resisting arrest and criminal contempt in the second degree.

After a jury trial, defendant was convicted of assault in the second degree, criminal possession of a weapon in the third degree, criminal contempt in the first degree and other crimes resulting from an incident in a bar in the City of Troy, Rensselaer County, in the early morning hours of March 31, 2006. It was undisputed that defendant's girlfriend arrived at the bar, yelling at defendant about him taking her keys. An argument erupted, during which another patron, Zachary Butler, sustained a cut to his left arm while attempting to intervene in the heated

dispute between defendant and his girlfriend, for whom a stay-away order of protection against defendant had recently been issued. Defendant was expelled from the bar, which was then locked. After banging on the doors to the bar, defendant punched the front window, breaking it, for which he was convicted of criminal mischief. Defendant then went to the girlfriend's home, where he was arrested after a struggle with police, leading to the convictions for resisting arrest and criminal contempt in the second degree. Sentenced to an aggregate prison term of seven years, defendant appeals.

Initially, defendant's challenge to County Court conducting a bifurcated *Wade* hearing lacks merit. At the People's request, the court first heard testimony addressing the procedures employed in three consecutive photo arrays shown to Butler, and it ruled that they were unduly suggestive. The court then permitted the People to call Butler as a witness to testify regarding his observations of defendant during the incident, after which the court determined that he had an independent source for an in-court identification of defendant. While prosecutors have been advised—for appellate review purposes—"to come forward with any independent source evidence at a *Wade* hearing so that the suppression court may, where appropriate, rule in the alternative" (*People v Wilson*, 5 NY3d 778, 780 [2005]), "the People have no burden to come forward with independent source evidence in every case absent a showing that a pretrial identification procedure is impermissibly suggestive" (*People v Burts*, 78 NY2d 20, 24 [1991]). Thus, the bifurcated approach was permissible.

We are also unpersuaded by defendant's challenges to the legal sufficiency and weight of the evidence, which focus on the fact that the weapon used to cut Butler was not observed by any of the witnesses or recovered by police when they responded to the scene. The defense theory at trial was that Butler cut his arm during the struggle on a jagged edge of the metal strip located on the bar's footrest. Initially, assault in the second degree required proof that defendant intentionally caused physical injury to Butler by means of a deadly weapon or dangerous instrument (*see* Penal Law § 120.05 [2]). Defendant's challenge to the sufficiency of the proof that Butler sustained a physical injury was not properly preserved by a specific motion (*see People v Gray*, 86 NY2d 10, 19 [1995]) and, in any event, the testimony of Butler and the medical examiner, a forensic pathologist, established that he sustained a very painful 29-centimeter cut which required 35 stitches. Thus, the People established that Butler suffered the requisite injury to sustain

the assault conviction (see *People v Amato*, 1 AD3d 713, 715 [2003], *lv denied* 1 NY3d 594 [2004]; *People v Shannon*, 273 AD2d 505, 506-507 [2000], *lv denied* 95 NY2d 892 [2000]; *see also* Penal Law § 10.00 [9]).

With regard to the adequacy of the proof that defendant inflicted this injury by means of a deadly weapon or dangerous instrument (see Penal Law § 10.00 [12], [13]), an issue that was preserved by defense counsel's motions for a trial order of dismissal, we find that the evidence adduced at trial sufficiently established this element of the assault and criminal possession counts notwithstanding the fact that the witnesses never saw the weapon and police were not able to recover it (see *People v Wade*, 274 AD2d 438, 439 [2000], *lv denied* 95 NY2d 939 [2000]). Butler testified that as he held defendant back from the girlfriend with his left hand and looked away, defendant cut his left arm with an unseen object, and then defendant—looking directly at Butler—immediately stated, "I made Superman[1] bleed. I cut ya." and "Where's my blade?" Butler further testified that Raymond Bronk, a part owner of the bar, responded that he had "kicked it out the door." The medical examiner testified that Butler's cut was "very linear" and "very thin" and that it was consistent with a "sharp edged weapon or tool," such as a razor blade. He opined that the cut was "not a jagged, tearing wound" or consistent with a wound that would be caused by falling onto a jagged piece of metal, as the defense posited. Viewing the evidence most favorably to the prosecution, we find that the People sufficiently proved defendant's possession of a dangerous instrument or deadly weapon and intentional conduct using that weapon to cause injury to Butler (see *People v Bleakley*, 69 NY2d 490, 494-495 [1987]; *People v Abera*, 2 AD3d 1155, 1156 [2003], *lv denied* 1 NY3d 624 [2004]; *People v Wade*, 274 AD2d at 439).

Turning to defendant's claim that the convictions are contrary to the weight of the evidence because Butler's testimony was either contradicted or not supported by that of the other eyewitnesses, we are unpersuaded. While a different finding—on the assault and criminal possession convictions—would not have been unreasonable, upon weighing "the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (*People ex rel. MacCracken v Miller*, 291 NY 55, 62 [1943]), we do not conclude that "the trier of fact has failed to give the evidence the weight it should be accorded" (*People v Bleakley*, 69 NY2d at 495; *see People v Danielson*, 9 NY3d 342, 348-349 [2007];

---

1. Butler was wearing a T-shirt with a Superman logo.

*People v Romero*, 7 NY3d 633, 643-644 [2006]). Defendant and defense witnesses testified, essentially, that Butler unnecessarily and aggressively intervened in a purely verbal confrontation between defendant and his girlfriend and, when Butler held defendant in a bear hug from behind, the bartender (Christine Roberts) attempted to separate defendant and Butler; during the struggle, defendant, Butler and Roberts all fell to the floor, at which point Butler must have cut his arm on a protruding jagged piece of metal on the footrest, as depicted in pictures taken subsequent to the incident that were introduced by the defense at trial. Defendant denied cutting Butler, possessing a knife or sharp-edged weapon or making the statements attributed to him; none of the defense witnesses saw a weapon or overheard defendant's remarks as recounted by Butler.

However, as the jury verdict implicitly reflects, the defense witnesses were neither unbiased nor particularly credible. The girlfriend, who had an infant with and was partially supported by defendant, admitted she still loved him and there was evidence that she continued to have contact with him despite the order of protection. Roberts, the bartender, was a personal friend of defendant and the girlfriend and, until months before the incident, had a long-term live-in relationship with defendant's brother; she signed a written statement in which she lied to police after the incident when she claimed, among other things, that an unknown white male was the perpetrator in an effort to protect defendant. Bronk, the part owner who denied kicking a weapon out the door after Butler was cut, was admittedly intoxicated that night and had known defendant for 25 years.

In our view, the defense witnesses' supposition that Butler was cut on a piece of metal near the floor was a speculative theory, first suggested to police more than a month afterward, which was contrary to the physical evidence—e.g., the blood markings on the floor and the parties' clothing, and the medical testimony—and was not especially believable. Further, the police officer who examined and photographed the scene immediately after the incident did not see the metal protrusion, which is not observable in his photographs. The officer testified that the defense photographs—which were taken on an unknown subsequent date—did not accurately reflect the condition of the footrest on the date of the incident and that it appeared as if the metal piece had since been "pried out." The few inconsistencies or shortcomings in Butler's testimony were fully explored at trial and were not of the type that rendered him unworthy of belief. According great deference to its first-hand

opportunity to assess the credibility, observations, and motives of all of the witnesses, we do not find that the jury failed to give the evidence the weight it deserved (*see People v Bleakley*, 69 NY2d at 495; *People v Casey*, 61 AD3d 1011, 1013-1014 [2009]).

Defendant's challenge to the legal sufficiency of the evidence supporting his conviction of criminal contempt in the first degree is unpreserved and, further, lacks merit. Butler's testimony constituted sufficient proof that, in violation of a known order of protection, defendant subjected his girlfriend to "physical contact"—striking her in the head—and did so "with intent to harass, annoy, threaten or alarm" her (Penal Law § 215.51 [b] [v]; *see People v Gorham*, 17 AD3d 858, 859 [2005]). While defendant and the girlfriend denied that he struck her and none of the other witnesses admitted seeing him do so, Bronk testified to seeing defendant pin her against a wall, holding her hands over her head so she could not get away during their altercation. The jury, by its verdict, credited Butler's testimony while rejecting the defense witness denials, and rationally inferred defendant's intent from his violent conduct, and we see no reason to disturb that verdict (*see People v Bleakley*, 69 NY2d at 495; *People v Soler*, 52 AD3d 938, 940 [2008], *lv denied* 11 NY3d 741 [2008]; *People v Roman*, 13 AD3d 1115, 1115-1116 [2004], *lv denied* 4 NY3d 802 [2005]; *People v Durant*, 6 AD3d 938, 940-941 [2004], *lv denied* 3 NY3d 639 [2004]; *People v Collins*, 178 AD2d 789, 789-790 [1991]).

Next, defendant contends that County Court erred in permitting the People—who presented no medical testimony or evidence in their direct case—to call the medical examiner to testify in rebuttal, based upon his review of Butler's medical records, to offer his opinion of the cause of Butler's cut, and that the refusal to grant even a one-day adjournment to permit defense counsel to prepare for this witness was reversible error. Although defendant specifically requested—in his demand for discovery and request for a bill of particulars—Butler's medical records, the People indicated in their response that they did not have them and, at trial, affirmed that they had no intention to introduce the medical records or related testimony. Defense counsel's motion at trial to preclude proof as to Butler's injuries was denied. When defense counsel specifically requested production of Butler's medical records as *Brady* material prior to Butler's testimony, the prosecutor stated that he had never subpoenaed them. After the defense presented its case—tendering the theory that Butler's injury was attributable to jagged metal on the footrest rather than to a weapon used by defendant—the People were granted permission, over defense

counsel's strenuous objection, to call Butler's treating physician in rebuttal; Butler's medical records, subpoenaed that day, were then turned over to defense counsel. The next morning, the prosecutor indicated that he had been unable to make contact with the treating physician and was permitted, over defense counsel's objection that he was not prepared to cross-examine this surprise witness, to call the medical examiner to testify regarding the nature and cause of Butler's injury. The medical examiner then testified from his review, the night prior, of the medical records. Defense counsel was granted one hour following that direct testimony in which to prepare for cross-examination; his request for an adjournment—to consult a medical expert to review the medical records received the night before—was otherwise denied.

The People could, and arguably should, have presented medical proof in their direct case regarding the cause of Butler's injury given their burden to prove the elements of assault in the second degree and their awareness that the defense had an alternate theory[2] as to the cause of Butler's cut. However, we cannot say under these circumstances that it was an abuse of discretion to permit medical testimony in rebuttal to refute the defense witnesses' assertions as to the cause of Butler's injury (*see* CPL 260.30 [7]; *People v Harris*, 98 NY2d 452, 489 [2002]), as "evidence [may be] properly received in rebuttal even if it could have been offered on direct" (*People v Harris*, 57 NY2d 335, 345 [1982], *cert denied* 460 US 1047 [1983]).

We also find that, since Butler's medical records were not in the possession of the People until the day the defense rested—at which time they were promptly given to defense counsel—there was no *Brady* violation (*see People v Vilardi*, 76 NY2d 67, 73 [1990]; *People v Darling*, 276 AD2d 922, 923-924 [2000], *lv denied* 96 NY2d 733 [2001]; *see generally Brady v Maryland*, 373 US 83 [1963]). However, while the decision whether to grant an adjournment is generally committed to the trial court's discretion (*see People v Spears*, 64 NY2d 698, 699-700 [1984]), where the protection of a fundamental right is implicated, the court's discretionary power is more narrowly construed (*see id.* at 700).

Here, while the more prudent course in such circumstances would have been to grant a longer adjournment, we also consider the fact that the defense could have consulted a medi-

---

2. Notably, Roberts' pretrial statement, given to the police five weeks after the incident, indicated her belief that Butler was injured on a jagged piece of metal during the struggle, and the defense's opening statement clearly indicated it would present an alternate theory.

cal expert prior to trial for advice, using the photograph of Butler's injury, to be on stand-by to testify—if necessary—regarding the characteristics of a cut attributable to a razor-like weapon versus a piece of jagged metal. The defense also could have—early on—requested County Court's assistance in procuring Butler's medical records, redacted as necessary, for a defense medical expert's review (*see e.g. People v Darling*, 276 AD2d at 923). Given the foregoing, we cannot say that the refusal to grant a further adjournment rose to the level of an abuse of discretion or operated to deprive defendant of a fair trial. In view of the overwhelming evidence of defendant's guilt, any error was harmless beyond a reasonable doubt (*see People v Johnson*, 1 NY3d 302, 308 and n 5 [2003]; *People v Crimmins*, 36 NY2d 230, 237 [1975]).

We have examined defendant's remaining contentions, including those directed at the prosecutor's summation and at the claimed severity of the sentence imposed, and are not persuaded. His challenge to the restitution order is not preserved for our review (*see People v Casey*, 61 AD3d at 1014).

Mercure, J.P., Malone Jr., Kavanagh and McCarthy, JJ., concur. Ordered that the judgment is affirmed.