■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JEVAUGHN J. FRANCIS, Appellant. [922 NYS2d 581]—

Spain, J.P. Appeal from a judgment of the County Court of St. Lawrence County (Richards, J.), rendered July 20, 2009, upon a verdict convicting defendant of the crime of assault in the second degree.

On the evening of October 26, 2008, Matthew Rivera was walking with several other students from the State University of New York at Canton in the Village of Canton, St. Lawrence County, when they were confronted by a group that included defendant and codefendants Darryl Tucker and Roody Dorfeuille. According to eyewitness accounts, Rivera was stabbed and beaten by Dorfeuille and Tucker, and then defendant kicked Rivera in the head. Rivera sustained eight stab wounds and numerous injuries. As a result, defendant and his codefendants were charged in a seven-count indictment and, following a jury trial, the codefendants were found guilty of gang assault and assault, both in the first and second degree, while defendant was convicted of assault in the second degree. Sentenced to a prison term of three years followed by three years of postrelease supervision, defendant appeals.

Defendant's challenges to the legal sufficiency and weight of the evidence are not persuasive. Assault in the second degree is established by proof that defendant intended "to cause physical injury to another person" and that such injury was caused "by means of a deadly weapon or a dangerous instrument" (Penal Law § 120.05 [2]). This count of the indictment charged all three defendants with acting in concert, requiring the People to prove that defendant, acting with the requisite intent to cause physical injury, intentionally aided his codefendants' criminal conduct (see Penal Law § 20.00). Defendant argues that the proof failed to establish that he acted with the requisite intent, that he caused physical injury or that he intentionally aided his codefendants in their use of a dangerous weapon or deadly instrument. Defendant did not specifically raise the first two of these claims in his motion for a trial order of dismissal directed at this count and, thus, they are not preserved for our review, although we necessarily consider them in defendant's weight of the evidence challenge (see People v Gray, 86 NY2d 10, 19 [1995]; People v Andrews, 78 AD3d 1229, 1230 [2010]).

Viewing the evidence in the light most favorable to the People, we find that there was legally sufficient evidence that defendant acted in concert with his codefendants in their assault on Rivera (see People v Bleakley, 69 NY2d 490, 495 [1987]). The combined

testimony of Rivera and three student eyewitnesses established that, while en route off campus to see a movie and amidst a crowd of students in the vicinity, they heard shouts from behind to "stop" or "stop walking." Tucker, known to Rivera and the witnesses, was seen ripping off his shirt yelling, "Who wants to get wet?," which was understood to mean who wants to see their own blood. At that point, defendant stood behind or aside Tucker, facing Rivera and his friends; Tucker asked who Rivera was, prompting Rivera to remove a winter face mask that he was wearing. Dorfeuille, who Rivera did not know, then suddenly accosted Rivera, striking him twice in the chest and face, to which Rivera responded by swinging back. Tucker then hit Rivera in the face and both Tucker and Dorfeuille continued to repeatedly strike Rivera, causing him to fall to the ground, and others in the crowd may also have joined in the attack. Tucker and Dorfeuille then backed up somewhat and, as Rivera was falling to the ground or after he had fallen, the eyewitnesses observed defendant kick Rivera in the head, although Rivera, who was face down and drew into a fetal position, could not see who was then hitting or kicking him. Among the witnesses was Rivera's then girlfriend from whom he was estranged at the time of the trial, who knew defendant and Tucker well and had met Dorfeuille on campus.

After the attack, which lasted only a few minutes, Rivera realized that he had been stabbed and he was transported to a hospital for emergency medical treatment. Contrary to defendant's claim, crediting the People's proof and the permissible inferences to be drawn therefrom, the evidence established that defendant was with his codefendants when Tucker aggressively confronted Rivera, and defendant stepped forward and actively joined in the attack after Tucker and Dorfeuille assaulted Rivera, and after Rivera attempted to fight back. This testimony was legally sufficient to support the jury's conclusion that defendant acted in concert with his codefendants, intentionally aiding their brutal attack on Rivera.

Turning to defendant's challenge to the weight of the evidence, this is premised upon the defense's theory that defendant was not initially part of the attacking group and only kicked Rivera after Rivera punched defendant as Rivera fought back against Tucker and Dorfeuille. Defendant did not testify and none of the eyewitness accounts supports that scenario. Rather, Rivera's ex-girlfriend testified that defendant was not initially within reach of Rivera, and no one saw Rivera hit defendant. Testimony that defendant approached Rivera along with his co-defendants, all facing Rivera and his friends, and defendant—

aware of the assault—stepped forward to join their attack by kicking Rivera persuasively established that defendant shared a community of purpose with them; thus, we find that the jury's verdict was supported by the weight of credible evidence (*see People v Danielson*, 9 NY3d 342, 348 [2007]; *People v Bleakley*, 69 NY2d at 495).

Likewise, defendant's intent to injure Rivera was easily inferable from his conduct (*see People v Terk*, 24 AD3d 1038, 1039-1040 [2005]; *People v Seabrooks*, 289 AD2d 515 [2001], *lv denied* 98 NY2d 640 [2002]). Moreover, the medical testimony established that Rivera sustained multiple potentially life-threatening stab wounds in the vicinity of (although not reaching) his lungs, spleen and heart, and bruising by his left eye, and he experienced significant pain, fully supporting the jury's conclusion that he sustained physical injury as a result of the attack (*see* Penal Law § 10.00 [9]; *People v Gragnano*, 63 AD3d 1437, 1439-1440 [2009], *lv denied* 13 NY3d 939 [2010]). We discern no reason to disagree with the jury's credibility determinations related to the largely unrefuted evidence and are satisfied that the verdict is not against the weight of the evidence (*see People v Bleakley*, 69 NY2d at 495).

Next, defendant was not deprived of a fair trial as the result of alleged evidentiary errors. The ex-girlfriend's unsolicited comment that she knew defendant because she had recently helped him with his cuts after "[h]e was in a fight" did not necessarily suggest criminal history or violent propensity, was only minimally prejudicial, and County Court mitigated any prejudice by striking the answer and directing the jury to disregard it (*see People v Santiago*, 52 NY2d 865, 866 [1981]; *People v Carter*, 40 AD3d 1310, 1312-1313 [2007], *lv denied* 9 NY3d 873 [2007]). Moreover, we discern no abuse of discretion in the court's rulings allowing into evidence photographs depicting Rivera's stab wounds. The photographs were probative of the disputed physical injury and serious physical injury elements of several of the charges against defendant and were not admitted solely to arouse the jury's emotions, and the court promptly instructed the jury not to dwell on them and to view them "quickly, calmly and unemotionally" (*see People v Timmons*, 78 AD3d 1241, 1244-1245 [2010]; *People v Ford*, 43 AD3d 571, 574 [2007], *lv denied* 9 NY3d 1033 [2008]; *see also People v Pobliner*, 32 NY2d 356, 369-370 [1973], *cert denied* 416 US 905 [1974]). Likewise, the court properly allowed Rivera to display his scars to demonstrate their location, which the photographs did not show, and their severity (*see People v Schwing*, 9 AD3d 685, 686 [2004], *lv denied* 3 NY3d 742 [2004]). Further, no prejudice

resulted from the prosecutor's cross-examination of the police investigator who took Rivera's statement within hours of the attack, in which Rivera denied recognizing his assailants. The inquiry focused on Rivera's physical and mental condition at that time, only hours after he received multiple stab wounds, and was not an attempt to appeal to the emotions of the jurors, who were well aware of those injuries and his condition.

Finally, we do not find that County Court's denial of youthful offender status was an abuse of discretion (*see People v Mc-Lucas*, 58 AD3d 950, 951 [2009]) or that the sentence imposed was harsh and excessive or a penalty for going to trial (*see People v Bush*, 75 AD3d 917, 920 [2010], *lv denied* 15 NY3d 919 [2010]). In making its determination, the court took into consideration many favorable factors, including defendant's lack of criminal history, youth, status as a college student, the People's candid assessment that he was the least responsible among the defendants and the Probation Department recommendation in favor of youthful offender status. However, the court was justifiably persuaded by the People's opposition to such a discretionary status, despite their initial disinclination to seek a prison sentence, given defendant's unrepentance and failure to accept responsibility, including when interviewed by the Probation Department. While defendant had been offered a plea deal with a recommendation for probation and youthful offender status, this would have been in exchange for testifying against his co-defendants, which he rejected. On these facts, we are not convinced that the imposition of a prison sentence close to the minimum authorized was improvident (*see* Penal Law § 70.02 [1] [c]; [3] [c]).

Defendant's remaining claims are devoid of merit.

Stein, McCarthy, Garry and Egan Jr., JJ., concur. Ordered that the judgment is affirmed.