■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CORY J. CLARKE, Appellant. [975 NYS2d 194]—

Garry, J.

Shortly after noon on July 4, 2009, defendant reported that the victim, then just under seven months old, was missing from a Wal-Mart store in the Town of Thompson, Sullivan County. That evening, the victim was found in a nearby wooded area. Defendant was indicted for various crimes and, following a jury trial, convicted of attempted murder in the second degree, criminal sexual act in the first degree, sexual abuse in the first

degree, incest in the first degree, assault in the second degree, abandonment of a child, endangering the welfare of a child, and predatory sexual assault against a child. He was sentenced to an aggregate prison term of 50 years to life, and now appeals.[1]

Defendant first contends that his convictions for attempted murder in the second degree, sexual abuse in the first degree and assault in the second degree are not supported by legally sufficient evidence. As he concedes, this claim was not preserved for appellate review (*see People v Gray*, 86 NY2d 10, 19-20 [1995]). In view of defendant's inconsistent descriptions of his actions on the day in question, the contrast between his accounts and the actual events revealed by surveillance video and witness testimony, his apparent efforts to prevent police from locating the victim, the circumstances of her eventual discovery, her extreme youth, the nature of her injuries and the other evidence, we find no reason to exercise our interest of justice jurisdiction to modify any of these convictions (*see* CPL 470.15 [3]; *see generally People v Bleakley*, 69 NY2d 490, 495 [1987]).

Defendant next contends that County Court erred in denying his pretrial motion pursuant to County Law § 722-c for funds to hire a DNA expert. To prevail, he was required to show that he was indigent, that the service was necessary to his defense and, if the compensation he sought exceeded the statutory limit of $1,000, that extraordinary circumstances justified the expenditure (*see People v Brand*, 13 AD3d 820, 821 [2004], *lv denied* 4 NY3d 851 [2005]; *People v Dearstyne*, 305 AD2d 850, 852 [2003], *lv denied* 100 NY2d 593 [2003]). As defendant contends, the fact that a relative was paying his counsel fees did not defeat his claim of indigency (*see People v Ulloa*, 1 AD3d 468, 469 [2003]). Nonetheless, the decision whether to grant an application under County Law § 722-c is discretionary (*see People v Lane*, 195 AD2d 876, 878 [1993], *lv denied* 82 NY2d 850 [1993]). Defendant's broad application sought public funds to hire multiple investigators and experts, and failed to state a "distinct necessity" for the assistance of a DNA expert other than the People's use of DNA evidence (*People v Dove*, 287 AD2d 806, 807 [2001]; *see People v Gallow*, 171 AD2d 1061, 1062-1063 [1991], *lv denied* 77 NY2d 995 [1991]). Moreover, the application made no claim or showing of extraordinary circumstances, nor did it indicate whether the compensation sought would exceed $1,000 or detail the time to be spent and particular services rendered by the DNA expert (*see People v Dove*, 287 AD2d

---

1. County Court granted the People's motion to dismiss the criminal sexual act conviction as a lesser included offense, as recorded in the certificate of conviction.

at 807; *People v Dearstyne*, 305 AD2d at 852-853).[2] Accordingly, we find that the denial was not an abuse of discretion.

Defendant further relies upon the denial of his pretrial request for a DNA expert as the basis of his claim that his post-trial motion to vacate the jury verdict should have been granted. In support of the posttrial motion, he submitted the report of a DNA expert who criticized the People's DNA analysis. Assuming without deciding that defendant sufficiently established that this report could not have been submitted before trial with due diligence (*see* CPL 330.30 [3]),[3] the report did not constitute newly discovered evidence, as it merely attempted to impeach and contradict trial evidence and—in view of the overwhelming evidence of defendant's guilt—did not create a probability that the verdict would have been more favorable if the report had been admitted at trial (*see People v Salemi*, 309 NY 208, 226 [1955], *cert denied* 350 US 950 [1956]; *People v Tucker*, 40 AD3d 1213, 1215 [2007], *lv denied* 9 NY3d 882 [2007]; *People v Hayes*, 295 AD2d 751, 752 [2002], *lv denied* 98 NY2d 730 [2002]).

We reject defendant's contention that his counsel inadequately waived his right to be present during sidebar conferences (*see generally People v Antommarchi*, 80 NY2d 247, 250 [1992]). Prior to jury selection, County Court inquired whether defendant would attend sidebar conferences, and defense counsel advised that he would not. A moment later County Court noted defendant's presence in the courtroom. Shortly thereafter, the prosecutor sought to confirm that defendant intended to waive his appearance at sidebar conferences, and defense counsel responded to the court's further inquiry that he would. Defendant now argues that he was not present when his counsel waived his appearance. However, this record does not demonstrate that he was absent, and we thus find that defendant has not met the burden of coming forward with substantial evidence to defeat the presumption of regularity that attaches to judicial proceedings (*see People v Velasquez*, 1 NY3d 44, 48 [2003]; *People v Keen*, 94 NY2d 533, 538-539 [2000]; *People v Robinson*, 191 AD2d 523, 523 [1993], *lv denied* 81 NY2d 1018 [1993]; *see also People v Williams*, 11 AD3d 810, 812 [2004], *lv denied* 4 NY3d 769 [2005]). We further note that, following the waiver by counsel, defendant was present during two sidebar conferences

2. Defendant's motion stated that "rates for medical experts and a CV for a forensic DNA expert" were attached, but there is no such attachment in the record. Defendant's posttrial motion to set aside the jury verdict asserted that the cost of hiring a DNA expert before trial would have exceeded $5,000.

3. Defendant asserted that the DNA report could not have been produced earlier as the relative who paid for it could not afford to do so before the trial.

exploring potential juror bias and, on appeal, he has not identified any material stage of the proceedings from which he was excluded and in which his presence could have had "a substantial effect on [his] ability to defend against the charges" (*People v Sloan*, 79 NY2d 386, 392 [1992]). While the best practice is for the court to directly explain the right being waived to a defendant and confirm the knowing and voluntary nature of his or her waiver, no such colloquy is required "on the off-chance that a defendant who is adequately represented by counsel may nevertheless not know what he [or she] is doing" (*People v Velasquez*, 1 NY3d at 49 [internal quotation marks, ellipses and citation omitted]; *see People v Hoppe*, 96 AD3d 1157, 1157-1158 [2012], *lv denied* 19 NY3d 1026 [2012]).

Defendant next contends that he was denied his right to a fair trial by the admission of three photographs depicting injuries to the infant victim's genital and rectal area, which he claims were highly prejudicial and not probative of any material issue, as the nature of the injuries was not in dispute. This claim is unpreserved (*see People v Wright*, 38 AD3d 1004, 1006 [2007], *lv denied* 9 NY3d 853 [2007]; *People v Sawyer*, 23 AD3d 845, 847 [2005], *lv denied* 6 NY3d 852 [2006]). However, as defendant relies upon this failure as one of the grounds for his claim that he received ineffective assistance of counsel, we note that counsel may have deemed an objection to be unnecessary or futile (*see e.g. People v Bonelli*, 41 AD3d 972, 973 [2007], *lv denied* 9 NY3d 921 [2007]). Before the photographs were displayed to the jury, County Court warned that "you are going to see some photographs that are quite a graphic depiction of a very serious situation. It's extremely emotionally charged and I know that all of you will have a difficult time viewing this . . . but it is relative [sic] and probative of what happened. Who happened to do it is another issue, but it is admissible for purposes of what happened."[4] Counsel could reasonably have concluded that no objection was likely to succeed in the face of this warning, which indicated County Court's opinion that the photographs were relevant, and instructed the jury as to the limited purpose for which they were admitted (*see People v Francis*, 83 AD3d 1119, 1122 [2011], *lv denied* 17 NY3d 806 [2011]). In our view, the pictures accurately depicted the victim's injuries, corroborated the observations of the nurse who treated her upon her arrival at the hospital, and were disturbing because of the victim's infancy and the nature of her injuries rather than because they were presented in an unnecessarily

---

4. Notably, defense counsel had also warned jurors during his opening statement that they would see disturbing photographs of the victim's injuries.

inflammatory manner. Thus, if the issue had been preserved, we would have disagreed with defendant's claim that the photographs were admitted for the sole purpose of arousing prejudice against him (*see People v Wood*, 79 NY2d 958, 960 [1992]; *People v Manos*, 73 AD3d 1333, 1339 [2010], *lv denied* 15 NY3d 807 [2010]; *see also People v Skinner*, 298 AD2d 625, 626 [2002]), and we find no reason to modify the judgment in the interest of justice.

Even if defendant had preserved his next contention that the People were improperly permitted to elicit testimony regarding his silence and demeanor while speaking with police (*see* CPL 470.05 [2]; *People v Shepherd*, 83 AD3d 1298, 1301 [2011], *lv denied* 17 NY3d 809 [2011]), we would have found it to be without merit. Defendant never invoked his right to remain silent or refused to answer questions while speaking with investigators. Instead, the testimony in question addressed "telling omissions" from defendant's statements, such as failing to claim that anyone approached the stroller before the victim disappeared or to ask what police were doing to find her (*People v Savage*, 50 NY2d 673, 678 [1980], *cert denied* 449 US 1016 [1980]; *see People v Bierenbaum*, 301 AD2d 119, 138 [2002], *lv denied* 99 NY2d 626 [2003], *cert denied* 540 US 821 [2003]). Likewise, witness testimony describing defendant's demeanor during the search for the victim was relevant to demonstrate that his calmness was inconsistent with his account of her disappearance and did not constitute improper comment on his silence (*see People v Bido*, 235 AD2d 288, 289 [1997], *lv denied* 89 NY2d 1009 [1997]).

Defendant's claim that he was deprived of a fair trial by various remarks made by the prosecutor during his opening statement and summation is unpreserved for appellate review, as his counsel did not object to the comments in question (*see People v Leonard*, 83 AD3d 1113, 1117 [2011], *affd* 19 NY3d 323 [2012]). We are unpersuaded by defendant's claim that this failure deprived him of meaningful representation. Ineffective assistance of counsel does not arise " 'from counsel's failure to make a motion or argument that has little or no chance of success' " (*People v Bahr*, 96 AD3d 1165, 1167 [2012], *lv denied* 19 NY3d 1024 [2012], quoting *People v Caban*, 5 NY3d 143, 152 [2005]). Here, most of the challenged remarks were fair comments on the evidence; some of the statements that defendant now objects to merely highlighted the undisputed evidence that the victim was left alone in a deserted, trash-strewn area, and others were made in the course of arguing that defendant's statements to police were inconsistent with one another and with the evi-

dence. The prosecutor's use of the word "I" in commenting on defendant's demeanor "was merely stylistic and not an impermissible expression of personal opinion" (*People v Lamont*, 21 AD3d 1129, 1131-1132 [2005], *lv denied* 6 NY3d 835 [2006]; *see People v Grajales*, 294 AD2d 657, 658 [2002], *lv denied* 98 NY2d 697 [2002]; *see also People v Morgan*, 66 NY2d 255, 259 [1985]; *compare People v Wlasiuk*, 32 AD3d 674, 681 [2006], *lv dismissed* 7 NY3d 871 [2006]; *People v Russell*, 307 AD2d 385, 386-387 [2003]). Although some of the prosecutor's language was arguably inflammatory, this was not so flagrant or pervasive as to require reversal (*see People v McCall*, 75 AD3d 999, 1002 [2010], *lv denied* 15 NY3d 894 [2010]; *People v McCombs*, 18 AD3d 888, 890 [2005]). As the prosecutor's remarks did not deprive defendant of a fair trial, his counsel was not ineffective for failing to object to them (*see People v Sudler*, 75 AD3d 901, 906 [2010], *lv denied* 15 NY3d 956 [2010]).

Defendant's remaining allegations of ineffective assistance of counsel are unpersuasive. Defendant has not identified any materials that his counsel failed to obtain in pretrial discovery, and we note that the People employed an open file discovery policy (*see People v Moyer*, 75 AD3d 1004, 1007 [2010]). The record reveals that defense counsel actively participated in *Huntley* and *Wade* hearings, and made posthearing submissions that County Court characterized as "very good." Defendant has not shown that other pretrial motions or hearings were necessary or had any likelihood of success (*see People v Workman*, 277 AD2d 1029, 1031-1032 [2000], *lv denied* 96 NY2d 764 [2001]; *compare People v Kirk*, 290 AD2d 805, 807-808 [2002]). Counsel also applied—albeit unsuccessfully—for funds to retain a DNA expert. Viewing the record as a whole, counsel pursued a consistent, cogent theory of defense, made successful objections, engaged in thorough cross-examination of the People's witnesses, and otherwise provided defendant with "meaningful representation" (*People v Baldi*, 54 NY2d 137, 147 [1981]; *see People v Jones*, 101 AD3d 1241, 1243 [2012], *lv denied* 21 NY3d 944 [2013]).

Rose, J.P., Stein and McCarthy, JJ., concur. Ordered that the judgment is affirmed.