People v Wells (2024 NY Slip Op 01128)

People v Wells

2024 NY Slip Op 01128

Decided on February 29, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 29, 2024

112141
[*1]The People of the State of New York, Respondent,
v
Elliott Wells, Appellant.

Calendar Date:January 8, 2024

Before:Garry, P.J., Pritzker, Lynch, Fisher and Powers, JJ.

Theresa M. Suozzi, Saratoga Springs, for appellant.
Mary Pat Donnelly, District Attorney, Troy (George J. Hoffman Jr. of counsel), for respondent.

Lynch, J.
Appeal from a judgment of the County Court of Rensselaer County (Jennifer G. Sober, J.), rendered November 1, 2019, upon a verdict convicting defendant of the crimes of predatory sexual assault against a child and endangering the welfare of a child.
Defendant was charged in a 76-count indictment with an array of crimes related to allegations that he engaged in sexual conduct with victim A and victim B on several occasions between June 2015 and January 2018. Both victims were under the age of 11 at the time. Counts 5 through 74 were dismissed during pretrial proceedings. Following a jury trial, defendant was convicted of all remaining counts concerning victim A — i.e., one count each of predatory sexual assault against a child, course of sexual conduct against a child in the first degree and endangering the welfare of a child — and acquitted of all charges pertaining to victim B. County Court thereafter granted defendant's application to dismiss the conviction of course of sexual conduct against a child in the first degree as a lesser included offense of the conviction of predatory sexual assault against a child, but otherwise denied his motion to set aside the verdict. Defendant was sentenced to a prison term of 25 years to life on the conviction of predatory sexual assault against a child and a concurrent term of 364 days on the conviction of endangering the welfare of a child. Defendant appeals.
Primarily relying on certain inconsistencies in victim A's testimony, defendant contends that the verdict is legally insufficient and against the weight of the evidence. We disagree. As relevant here, "[a] person is guilty of predatory sexual assault against a child when, being [18] years old or more, he or she commits the crime of . . . course of sexual conduct against a child in the first degree . . . and the victim is less than [13] years old" (Penal Law § 130.96). A person commits course of sexual conduct against a child in the first degree "when, over a period of time not less than three months in duration[,] . . . he or she engages in two or more acts of sexual conduct, which includes at least one act of sexual intercourse, oral sexual conduct, anal sexual conduct or aggravated sexual conduct, with a child less than [11] years old" (Penal Law § 130.75 [1] [a]). A conviction for endangering the welfare of a child requires proof that a person "knowingly act[ed] in a manner likely to be injurious to the physical, mental or moral welfare of a child less than [17] years old" (Penal Law § 260.10 [1]).
At trial, the People elicited testimony that, between June 2015 and January 2018, victim A and defendant were living in the same household. Victim A was between the ages of 6½ and 9½ during this period and defendant was over 25. Victim A testified that, on over 30 occasions when they were living together, defendant "put his private part in [her] private part," describing the shape of a penis when asked to clarify. She also described a circumstance in which [*2]defendant made her rub his private parts with lotion while she was blindfolded. According to victim A, the abuse occurred at night while her siblings slept and her mother was at work, and in various locations throughout the residence. Victim A testified that she first disclosed the abuse to a friend and later disclosed it to victim B after she became concerned that victim B may have also been abused. A few months later, victim A disclosed the abuse to her mother, explaining that she was prompted to do so after she had watched a video at school explaining the difference between a "good touch" and a "bad touch" and after she had a dream about it.
Although victim A stated during the trial that she believed the abuse began when she was in second grade and ended when she was in fourth grade — i.e., between 2015 and 2017 — she acknowledged on cross-examination that, when describing the abuse during a Child Protective Services (hereinafter CPS) investigation after disclosing it to her mother, she stated that the conduct occurred between March 2017 and December 2017. Victim A also acknowledged that she had informed her counselor that her friend was in the room during one of the alleged incidents, but did not disclose this during her grand jury testimony.[FN1] Although victim A's mother testified that she did not doubt victim A's allegations "for a second," she conceded on cross-examination that she had previously told defendant, on several occasions, that she did not believe the allegations. Victim A underwent a sexual assault nurse examination (hereinafter SANE) in June 2018, which did not yield any evidence of abuse. However, the SANE nurse who performed the exam explained that this was expected given that victim A informed her that the abuse occurred several months prior, between March 2017 and December 2017.
Defendant called his niece to testify on his behalf, who explained that she regularly stayed in defendant's home when victim A lived there and had never seen any inappropriate conduct between them. Nor had the niece heard victim A scream or cry out when she slept at the house. The niece further testified that victim A did not seem scared of defendant when she saw them interact. Defendant's sister also testified to this effect, explaining that she had never seen defendant act inappropriately toward victim A and that victim A did not seem scared of him. The sister testified that she found out about the allegations from defendant himself, who had come to her house "hysterical" and revealed that he was being accused of sexually abusing the children. Upon hearing these allegations, the sister drove defendant to their mother's home, maintaining that he cried the entire way there. Defendant took the stand at trial and adamantly denied the allegations against him, emphasizing, among other things, that when he spoke with victim A's mother, she told him that she did not believe the allegations.
When viewing the evidence in a light most favorable to the People[*3], we conclude that "there is a valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the fact finder" that defendant was guilty of predatory sexual abuse against a child and endangering the welfare of a child (People v Gilmore, 200 AD3d 1184, 1188-1189 [3d Dept 2021] [internal quotation marks, brackets and citations omitted], lv denied 38 NY3d 927 [2022]; see People v May, 188 AD3d 1309, 1310 [3d Dept 2020], lv denied 36 NY3d 974 [2020]). Accordingly, the verdict on these charges is supported by legally sufficient evidence. As for the weight of the evidence, defendant argues that victim A's testimony is unworthy of belief and notes that there was no corroborating physical evidence. "These issues may have rendered acquittal a reasonable possibility, but they were explored at trial and did not dissuade the jury from crediting" victim A (People v Horton, 173 AD3d 1338, 1340 [3d Dept 2019] [internal citation omitted], lv denied 34 NY3d 933 [2019]; see People v Hansel, 200 AD3d 1327, 1330 [3d Dept 2021], lv denied 38 NY3d 927 [2022]; People v Werkheiser, 171 AD3d 1297, 1301 [3d Dept 2019], lv denied 33 NY3d 1109 [2019]). Notwithstanding certain inconsistencies in the time frame of the abuse as relayed by victim A, the various time frames provided all spanned more than three months and she testified to over 30 incidents of sexual intercourse with defendant during this period. The jury duly credited victim A's testimony despite the inconsistencies and other evidence favorable to the defense, and there is no basis to disturb its credibility determination in her favor. That the SANE exam did not yield any positive results does not change the analysis, as it was performed several months following the disclosure. "Viewing the evidence in a neutral light, and deferring to the jury's resolution of the credibility issues," we conclude that the verdict on these charges is not against the weight of the evidence (People v Shackelton, 177 AD3d 1163, 1165-1166 [3d Dept 2019], lv denied 34 NY3d 1162 [2020]; see People v Hansel, 200 AD3d at 1330; People v Horton, 173 AD3d at 1340; People v Werkheiser,171 AD3d at 1300-1301).
Nor did defendant establish reversible error with respect to County Court's pretrial Sandoval ruling permitting the People to question defendant, should he choose to testify, about his 2006 guilty plea to attempted burglary. The court limited the inquiry solely to the fact that defendant had a prior felony conviction, without reference to the violent nature of the crime or underlying circumstances. After defense counsel expressed concern that the jury might assume the conviction was for a sex offense if the nature of the conviction was not disclosed, County Court gave defense counsel leeway in how to question defendant on this issue should he choose to preemptively do so on direct examination. Defense counsel ultimately pursued this line of questioning at trial, eliciting testimony that [*4]defendant was convicted of attempted burglary when he was 16 years old and about the underlying circumstances of the crime.
Although the prior conviction was for a crime of theft and, thus, potentially probative of defendant's honesty (see People v Bowes, 206 AD3d 1260, 1268 [3d Dept 2022]), we agree with defendant that its probative value was seriously diminished by the temporal remoteness and defendant's young age at the time of the crime. Nevertheless, the conviction was "so dissimilar to the charged crimes that it had little potential for unfair prejudice" (id. [internal quotation marks, brackets and citation omitted]), and any prejudice was further dissipated by County Court's instruction to the jury that the conviction could not be considered "for the purpose of proving that [d]efendant has a propensity or predisposition to commit the crimes charged in this case." Accordingly, we conclude that the Sandoval ruling did not deprive defendant of a fair trial.
Defendant's Molineux challenges are similarly unavailing. " 'While not admissible to demonstrate bad character generally or a propensity to commit the charged crimes, evidence of uncharged crimes or bad acts may be admitted if it establishes an element of the crime charged, . . . is inextricably interwoven with the charged crime, provides necessary background, . . . completes a witness's narrative, or falls within the five general Molineux exceptions' " (People v Hebert, 218 AD3d 1003, 1009 [3d Dept 2023], lv denied 40 NY3d 1080 [2023], quoting People v Pham, 118 AD3d 1159, 1161 [3d Dept 2014], lv denied 24 NY3d 1087 [2014]) — namely, " 'motive, intent, absence of mistake, common plan or scheme and identity' " (People v Hebert, 218 AD3d at 1009, quoting People v Gaylord, 194 AD3d 1189, 1193 [3d Dept 2021], lv denied 37 NY3d 972 [2021]).
As for the first asserted Molineux error, prior to trial, the People disclosed that they would be calling victim B's mother to testify and sought a ruling on whether they could question her about her arrest and prosecution in connection with a January 2010 domestic violence incident between her and defendant while she was pregnant. As an offer of proof, the People explained that this witness would testify that defendant struck her on this occasion and that she struck him back, resulting in her arrest and prosecution for attempted assault. Defendant objected, arguing that this testimony was wholly irrelevant and risked prejudicing the jury against him. Finding that the proposed testimony was relevant to complete the narrative of why victim B was not in her mother's custody and instead living with defendant at the time of the alleged sexual abuse, County Court permitted questioning as to this witness's conviction for assaulting defendant, along with the underlying facts, but precluded inquiry into additional domestic violence incidents between them. At trial, the prosecutor asked victim B's mother whether there had been an incident between her and defendant [*5]on January 19, 2010, to which she responded: "Probably so. We've had many incidents." County Court sustained defense counsel's objection in this regard. The prosecutor then elicited testimony solely about the January 19, 2010 incident, with victim B's mother explaining that defendant "pushed [her] off the bed" on this occasion and she "fought back." Although she could not remember "each blow for blow," she testified that they fought for "a while," she was pregnant at the time, and she was arrested and pleaded guilty to attempted assault in the third degree.
Initially, contrary to County Court's determination, the circumstances underlying the arrest and prosecution of victim B's mother in connection with the January 2010 incident were not relevant to complete the narrative of why victim B was living with defendant at the time of the underlying crimes. By permitting this witness to testify about the circumstances underlying her arrest in connection with the January 2010 incident, the jury heard testimony that defendant had engaged in acts of domestic violence against her while she was pregnant. Such testimony constituted impermissible Molineux evidence, had no probative value, and ran the risk of being prejudicial in the context of this prosecution (see People v Hebert, 218 AD3d at 1010).
Nevertheless, there was minimal prejudice to defendant. On cross-examination, defense counsel elicited extremely favorable testimony from this witness, getting her to admit that her relationship with defendant was "violent at [her] hands" and that defendant was the one who was "found battered and bleeding" after the incident (emphasis added). Victim B's mother also conceded that she had resisted arrest in connection with this incident and had been arrested again in May 2010 in connection with another circumstance in which she struck defendant. We also note that the jury acquitted defendant of all counts related to victim B, indicating that, even if they believed the story given by her mother in this regard, it did not impair their ability to render an impartial verdict based on the evidence. Accordingly, we cannot conclude that defendant was deprived of a fair trial in this regard (see People v Cutaia, 167 AD3d 1534, 1535 [4th Dept 2018], lv denied 33 NY3d 947 [2019]; People v Reynoso-Fabian, 134 AD3d 1141, 1146-1147 [3d Dept 2015]). Defendant's additional Molineux argument — this time directed at testimony given by victim A's mother — is also unavailing. The testimony that defendant was "away for two years" during their relationship was ambiguous and did not, as defendant asserts, suggest to the jury that he was incarcerated during this period.
We are unpersuaded by defendant's contention that County Court abused its discretion in denying his request for funds to hire an expert witness to testify about best practices when conducting forensic interviews of children alleged to be victims of sex abuse. "To succeed on a motion for funds pursuant to County Law § 722[*6]-c, it is incumbent upon a defendant to show that he or she was indigent, that the service was necessary to his or her defense and, if the compensation he or she sought exceeded the statutory limit of $1,000, that extraordinary circumstances justified the expenditure" (People v Rios, 192 AD3d 1336, 1337 [3d Dept 2021] [internal quotation marks, brackets and citations omitted]). A generalized statement of need is not enough. Rather, the defendant must demonstrate a " 'distinct necessity' " for the expert (People v Clarke, 110 AD3d 1341, 1342 [3d Dept 2013], lv denied 22 NY3d 1197 [2014], quoting People v Dove, 287 AD2d 806, 807 [3d Dept 2001]). "[T]he decision whether to grant an application under County Law § 722-c is discretionary" and is reviewed by this Court for an abuse of such discretion (People v Clarke, 110 AD3d at 1342).
During a mid-trial court conference held outside of the jury's presence, defense counsel renewed a prior motion for funds to retain an expert to testify about "best practices [when conducting] forensic interviewing . . . of children." A request for funds to hire this expert was set forth in an accompanying affidavit. Counsel revealed that the expert would testify about the importance of conducting forensic interviews of children in accordance with established guidelines to minimize the risk of inadvertently "suggesting" answers, explaining that such testimony was necessary to demonstrate problems with the manner in which a CPS interview of the victims was conducted and to support the assertion that victim A was fabricating the allegations against defendant. County Court denied the request, finding that, although defendant was indigent and had not requested funds in excess of the statutory limit, he failed to demonstrate that the expert was necessary for his defense. We find no abuse of discretion in this ruling. The People did not elicit any specific testimony about the victims' statements during the CPS interview conducted after the abuse was disclosed. Rather, it was defense counsel who referenced this interview in an attempt to impeach victim A by highlighting inconsistencies between her interview statements and trial testimony. In these circumstances, defendant did not establish a "distinct necessity" for this expert and County Court's denial of funds under County Law § 722-c was not an abuse of discretion (People v Rios, 192 AD3d at 1337 [internal quotation marks and citations omitted]).
Nor did County Court abuse its discretion in declining to grant defendant's request for an adjournment to secure a witness from CPS who, according to defense counsel, would testify that she destroyed handwritten notes of the victims' CPS interviews after transcribing them into a computer database. Besides failing to demonstrate that this witness's testimony would have been material and favorable to the defense, defendant's argument fails because County Court permitted him to call this witness and to question her about this issue, but [*7]he ultimately decided not to do so after the court declined to issue a preemptive ruling about whether her testimony would open the door to introduction of the transcribed CPS notes.[FN2] Defendant was not deprived of a fair trial by the court's failure to grant an adjournment to secure a witness he strategically declined to call (see generally People v Singleton, 41 NY2d 402, 405 [1977]; People v Vredenburg, 200 AD2d 797, 798-799 [3d Dept 1994], lv denied 83 NY2d 859 [1994]). Defendant also argues that County Court should have granted his request for a material witness order to secure certain CPS witnesses who declined to obey a subpoena to testify about the circumstances underlying the destroyed notes. However, defendant did not satisfy his burden under CPL 620.20, and the failure to issue such an order "did not undermine defendant's right to present a defense" in this case (People v Parsons, 18 AD3d 317, 317 [1st Dept 2005], lv denied 5 NY3d 792 [2005]).
Defendant's challenge to County Court's jury instructions relative to the predatory sexual assault charges also lacks merit. The court read the pattern Criminal Jury Instructions (hereinafter CJI) pertaining to this charge and correctly explained that course of sexual conduct against a child in the first degree is one of the predicate crimes necessary to obtain such a conviction (see CJI 2d [NY], Charge on Predatory Sexual Assault Against a Child, https://www.nycourts.gov/judges/cji/2-PenalLaw/130/
130.96.pdf [last accessed Jan. 16, 2024]). The court then read the definition of course of sexual conduct against a child in the first degree as set forth in the CJI, listing the various types of sexual conduct that can form the basis of such crime and providing the definition for the term "sexual intercourse" only (see CJI 2d [NY], Charge on Course of Sexual Conduct Against a Child in the First Degree, https://www.nycourts.gov/judges/cji/2-PenalLaw/130/130.75%281%29%28a%29.pdf [last accessed Feb. 16, 2024]). Defense counsel objected, on the basis that the court should not have referenced any sex act other than sexual intercourse when explaining the elements of course of sexual conduct against a child in the first degree, as this was the only sexual conduct charged in the indictment. The court denied defendant's objection and declined to re-read the charges as requested. We find no error in the court's charge as originally provided, as it " 'correctly recited the statutory elements of [predatory sexual assault against a child] and stated the fundamental legal principles applicable both generally and to this particular case' " (People v Van Alphen, 167 AD3d 1076, 1079 [3d Dept 2018], lv denied 32 NY3d 1210 [2019], quoting People v Kuykendall, 43 AD3d 493, 495 [3d Dept 2007], lv denied 9 NY3d 1007 [2007]; see CPL 300.10 [2]).
Finally, we deny defendant's request to reduce the sentence in the interest of justice (see People v Johnson, 183 AD3d 77, 91 [3d Dept 2020], lv denied 35 NY3d 993 [2020]). Although [*8]we recognize that defendant was sentenced to the statutory maximum, after considering all relevant facts and circumstances, we do not find the sentence imposed to be unduly harsh or severe (see CPL 470.15 [6] [b]). We have considered defendant's remaining contentions, including his claims of additional Rosario violations, as well as asserted Brady and discovery violations, and find them to be unavailing.
Garry, P.J., Pritzker, Fisher and Powers, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: The friend referenced by victim A did not testify in this case and a missing witness charge was given.

Footnote 2: Although County Court permitted defense counsel to call this witness and to question her about whether she destroyed the handwritten notes of the victims' CPS interviews after transcribing them into a computer database, the court denied defense counsel's request to also question this witness about whether there was a joint task force between CPS and the City of Troy Police Department in an attempt to establish that the destruction of the notes amounted to a Rosario violation, finding that defense counsel had not provided a sufficient offer of proof to establish the existence of such a joint task force. The court also denied defense counsel's request for a mid-trial Rosario hearing to determine whether this witness was acting as an arm of the police when she destroyed the notes. Defendant does not directly challenge the denial of such a request and, even if he did, we would find no reversible error in this regard (see People v Gillis, 220 AD2d 802, 805 [3d Dept 1995], lv denied 87 NY2d 921 [1996]). We take note that defendant was provided with copies of the typed notes, and, after conducting an in camera review of the CPS file, County Court observed that there were no handwritten notes from the interviews of the children, nor any drawings by the children.