■ THE PEOPLE OF THE STATE NEW YORK, Respondent, v DONALD J. POWERS, Appellant. [698 NYS2d 332] —Cardona, P. J. Appeal from a judgment of the County Court of St. Lawrence County (Nicandri, J.), rendered June 9, 1998, upon a verdict convicting defendant of the crime of criminal possession of stolen property in the fourth degree.

---

Following his arrest for aggravated unlicenced operation of a motor vehicle on August 15, 1997 in the City of Ogdensburg, St. Lawrence County, by Police Sergeant Mark Knowlton, defendant was discovered to be in possession of an American Express corporate credit card issued to Scott Springstead. Defendant was indicted for criminal possession of stolen property in the fourth degree. Subsequent to the denial of his motion to dismiss the indictment for insufficiency, defendant proceeded to trial and was found guilty of the charge. He was sentenced as a second felony offender to a prison term of 22 to 44 months.

On appeal, defendant contends that the evidence was legally insufficient to support the jury's verdict and against the weight of the evidence. Turning to legal insufficiency, Penal Law § 165.45 (2) provides in pertinent part, as follows: "A person is guilty of criminal possession of stolen property in the fourth degree when he knowingly possesses stolen property, with intent to benefit himself or a person other than an owner thereof or to impede the recovery by an owner thereof * * * when * * * the property consists of a credit card". Penal Law § 165.55 (1) further provides that, "[a] person who knowingly possesses stolen property is presumed to possess it with intent to benefit himself or a person other than an owner thereof or to impede the recovery by an owner thereof."

At trial, Springstead testified that in July 1997 defendant performed carpentry work for him at his medical office and noted that defendant was also, at the same time, a distributor of various health and vitamin supplements. According to Springstead, one evening while they were working defendant placed a telephone order for some vitamin supplements for Springstead using Springstead's Visa credit card. Springstead stated that he supervised the transaction. He either handed defendant the Visa card or laid his wallet down on the counter for defendant to remove the card. As far as he knew, only the Visa card was removed and that was the only time defendant made a purchase for him. Springstead testified that he never gave defendant permission to use or possess the American Express corporate credit card found during the inventory search of defendant's wallet. Springstead also testified that he only used the credit card for business travel and had not used it for 1½ to 2 years prior to August 15, 1997. He added that he believed the card to be valid prior to August 15, 1997,* but learned from the company on that day that the card had been canceled six months earlier due to inactivity. Knowlton testi-

---

* The credit card bore validation dates of October 1994 through September 1997.

fied that when he questioned defendant about the credit card, defendant stated that Springstead gave it to him because Springstead had purchased some merchandise through his business.

Defendant testified that when he placed the order for the supplements, several of his own business cards were on the counter. He either extracted the Visa card from Springstead's wallet or Springstead handed the card to him. He stated that Springstead told him the American Express corporate card was not valid and could not be used. Defendant further testified that, after he placed the order, he gathered up all of his cards from the counter and theorized that the American Express corporate card must have been swept up with the other cards and placed into his wallet. He stated that he never knew that Springstead's credit card was in his wallet. On cross-examination, defendant admitted that Springstead was in and out of the room at the time the order was placed and conceded that the green American Express corporate credit card was not the same color as his white business cards.

Viewing this evidence in the light most favorable to the People (*see, People v Contes*, 60 NY2d 620, 621), we find that there is a valid line of reasoning together with permissible inferences "which could lead a rational person to the conclusion reached by the jury * * * and as a matter of law satisfy the proof and burden requirements for every element of the crime" of criminal possession of stolen property in the fourth degree (*People v Bleakley*, 69 NY2d 490, 495). Furthermore, viewing the evidence in a neutral light and " 'weigh[ing] the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony' " (*id.*, at 495, quoting *People ex rel. MacCracken v Miller*, 291 NY 55, 62; *see, People v Moore*, 170 AD2d 847, 848, *lv denied* 77 NY2d 998), we conclude that the jury's verdict was not against the weight of the evidence (*see,* CPL 470.15 [5]).

Defendant also claims that he was deprived the effective assistance of counsel. He points to his counsel's failure to object to the prosecutor's remarks during the People's opening statement and testimony by Knowlton which indicated that defendant had multiple suspensions and unanswered summonses. Defendant argues that his credibility was further prejudiced when, on direct examination, counsel brought out a second conviction for criminal possession of stolen property despite the trial court's *Sandoval* ruling, which limited the prosecutor's inquiry to only one criminal possession of stolen property

conviction, one unspecified felony conviction and one conviction for unauthorized use of a motor vehicle. Finally, defendant asserts that he was prejudiced by counsel's failure to object to the prosecutor's remark in summation characterizing him as a felon inasmuch as the prosecutor did not specifically elicit such evidence during the trial.

In examining a claim of ineffective assistance of counsel, we are mindful that "[t]he core of the inquiry is whether defendant received 'meaningful representation' " (*People v Benevento*, 91 NY2d 708, 712). "The phrase 'meaningful representation' does not mean 'perfect representation' " (*People v Ford*, 86 NY2d 397, 404, quoting *People v Modica*, 64 NY2d 828, 829). "Hindsight should not escalate what may have been a few tactical errors into ineffective assistance of counsel" (*People v Baldi*, 54 NY2d 137, 151; *see, People v Jackson*, 52 NY2d 1027). Only errors that "seriously compromise[ ] a defendant's right to a fair trial" will sustain a claim of ineffectiveness (*People v Hobot*, 84 NY2d 1021, 1022; *see, People v Flores*, 84 NY2d 184, 188; *People v Baldi, supra*, at 146-147). Furthermore, "the claim of ineffectiveness is ultimately concerned with the fairness of the process as a whole rather than its particular impact on the outcome of the case" (*People v Benevento, supra*, at 714).

Here, defendant's argument was that he did not "knowingly" (*see*, Penal Law § 15.05 [2]; § 165.45) possess the credit card. Trial counsel attempted to elicit evidence in support of that defense through effective direct and cross-examination of witnesses. Obviously, the success of the defense hinged on the jury's assessment of defendant's credibility. It appears that counsel attempted to minimize the effect of defendant's prior criminal conduct by candidly introducing evidence of it first. Given the jury's knowledge of defendant's other criminal activity, we fail to see how revelation of the second conviction for criminal possession of stolen property instead of the one unspecified felony conviction so prejudiced him as to deprive him of his right to a fair trial. Even if we were to assume that trial counsel's conduct had an impact on the jury's verdict, that alone does not satisfy defendant's "high burden" of demonstrating "that he was deprived of a fair trial by less than meaningful representation" (*People v Hobot, supra*, at 1022; *see, People v Benevento, supra*, at 713-714). We reach the same conclusion with respect to defense counsel's failure to object to the comments and testimony concerning defendant's driving status as well as the reference to him as a felon. Viewing the evidence, the law and the circumstances of the instant case in their totality as of the time of the representation, we find that

defendant's counsel provided meaningful representation (*see, People v Flores*, 84 NY2d 184, 187, *supra; People v Baldi*, 54 NY2d 137, 147, *supra*).

Finally, we find that County Court did not commit error when it instructed the jury that an expired or canceled credit card is a credit card within the meaning of the Penal Law § 165.45 (2) (*see, People v Peterson*, 216 AD2d 10, *lv denied* 86 NY2d 800; *People v Johnson*, 214 AD2d 478, *lv denied* 86 NY2d 736; *People v Winfield*, 145 AD2d 449, *lv denied* 73 NY2d 1024; *People v Timmons*, 124 Misc 2d 766).

We have considered defendant's other contentions and find that they lack merit.

Mercure, Spain, Carpinello and Graffeo, JJ., concur. Ordered that the judgment is affirmed.

