THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KEVIN D. HALL, Appellant. [870 NYS2d 508]—

Stein, J.

The charges here arise out of three burglaries that occurred at three different locations between October 14 and October 16, 2006. There were no eyewitnesses to any of the burglaries. However, defendant was apprehended and arrested based upon an identification made by a local resident of the area in which the burglaries occurred, together with certain evidence found on defendant's person. Specifically, at approximately 9:00 P.M. on October 16, 2006, Christopher McKenna and his wife were sitting outside their home on Van Schoick Avenue in the City of Albany when they heard a noise coming from their yard. Upon investigation of the noise, McKenna discovered defendant, who appeared to be struggling to open a gate while handling a bicycle in order to exit McKenna's backyard. McKenna approached defendant to ask him what he was doing in his yard. After a conversation between McKenna and defendant, which lasted for several minutes, McKenna escorted defendant to the end of his driveway and watched as defendant proceeded up the street towards New Scotland Avenue. McKenna then called the police to report the incident.

Albany Police Officer Robert Paone arrived at McKenna's residence in response to the call, took McKenna's statement, called in a description of the man in McKenna's yard and proceeded to prepare a criminal trespass report. While preparing the report, Paone received a call that an individual matching Paone's initial broadcasted description had been apprehended. Paone brought McKenna to make a showup identification a few blocks away. However, McKenna stated that the person apprehended by the police was not the man he had previously encountered in his yard.

In the meantime, Albany Police Officer Salvatore Sturiale was on patrol in the nearby New Scotland Avenue and Pine Hills area when he heard the description that Paone had broadcast of a prowler at the McKenna residence. At approximately 11:00 P.M., Sturiale came upon defendant on New Scotland Avenue, who was riding a bicycle and carrying several bags and cases. Believing that defendant matched the description of the prowler, Sturiale attempted to pull up alongside the bicycle to speak to him. Defendant did not stop and turned right onto a driveway. When defendant began to run, Sturiale called for backup and began pursuing him on foot. Albany Police Officer Kyle McCraith and his K9 were called in and they located defendant in a backyard on Grove Street, crouching between two trash cans. Sturiale arrived on the scene and handcuffed defendant. In an attempt to identify defendant, Sturiale patted him down and found a credit/debit card in his front pocket, bearing the name

of William Fenner Frye III. Several other items were recovered from the scene and later identified as having been stolen from the residences of Cheryl White, Patrick O'Keefe and Frye.

After defendant was apprehended, Paone returned to the Mc-Kenna residence and asked McKenna to accompany him to Grove Street, which was approximately eight blocks away, for a second showup. On the way to Grove Street, Paone informed McKenna that the police had captured someone who could possibly be the man he had encountered earlier in his yard. When they arrived, McKenna was instructed to remain in the patrol car, while Paone exited the car. When Paone returned, he turned a spotlight on defendant, who had been brought out of another patrol car. McKenna immediately identified defendant as the man he had encountered in his yard.

Defendant was thereafter indicted for three counts of burglary in the second degree, two counts of grand larceny in the fourth degree, one count of grand larceny in the third degree, and one count of criminal possession of stolen property in the fourth degree. Defendant moved to, among other things, suppress McKenna's showup identification as unduly suggestive. After a suppression hearing, County Court denied defendant's motion, finding that, although the showup was suggestive, there was an independent source for McKenna's prospective in-court identification of defendant. Following a trial, defendant was convicted of one count each of burglary in the second degree, grand larceny in the fourth degree and criminal possession of stolen property in the fourth degree.* Defendant now appeals and we affirm.

First, we agree with County Court's determinations that McKenna's pretrial identification of defendant was unduly suggestive, but that there was an independent source for McKenna's prospective in-court identification (see People v Adams, 53 NY2d 241, 252 [1981]; People v West, 128 AD2d 570, 570-571 [1987], lv denied 70 NY2d 658 [1987]). McKenna had a face-to-face conversation with defendant for several minutes during which he carefully studied defendant to ensure that he was not in possession of his property, and he gave a description of defendant to the police shortly thereafter. His ability to accurately identify defendant was further bolstered by the fact that he did not identify another individual as the person found in his yard when

---

* The charges of which defendant was convicted related to property stolen from Frye's residence on Linden Road on October 16, 2006. The jury acquitted defendant of the four remaining counts of the indictment, which related to property stolen from the White and O'Keefe residences at other locations in Albany between October 14 and 15, 2006.

called to an earlier showup. Thus, McKenna's in-court identification of defendant was clearly proper (see id.). Furthermore, since McKenna's identification of defendant did not bear directly on defendant's guilt and given the other evidence of his guilt, as well as the vigorous cross-examination of McKenna with regard to the showup identification, any error in admitting testimony regarding the showup identification was harmless (see People v Adams, 53 NY2d at 252).

We further find that defendant's convictions are supported by legally sufficient evidence. When considering a challenge to the legal sufficiency of the evidence, we view the evidence in the light most favorable to the People (see People v Brown, 46 AD3d 949, 951 [2007], lv denied 10 NY3d 808 [2008]), and we will not disturb the verdict if the evidence demonstrates a valid line of reasoning and permissible inferences that could lead a rational person to the conclusion reached by the jury (see People v Bleakley, 69 NY2d 490, 495 [1987]).

With respect to defendant's conviction of burglary in the second degree, the People were required to prove that defendant knowingly entered or remained unlawfully in a dwelling with the intent to commit a crime therein (see Penal Law § 140.25 [2]). Frye, who lives near the area where defendant was apprehended, testified at trial that he was away from his residence from approximately 6:00 A.M. to 9:15 or 9:30 P.M. on October 16, 2006—the same day that defendant was seen in McKenna's yard and later apprehended by police. Upon returning home that evening, Frye immediately noticed that someone had been in his house and specifically observed that his jewelry box—where his dog tags were normally kept—was missing, but, because he was tired, he decided to go to bed and investigate further the next day. At approximately 11:00 P.M., Frye was awakened by a police officer at his door and learned that the police had recovered several items that belonged to him, including his dog tags, cuff links, a leather box containing silverware, a maroon pillow case and a credit/debit card.

The evidence as to the circumstances surrounding defendant's apprehension is legally sufficient to support a finding that defendant committed burglary as charged in count 5 of the indictment. Specifically, defendant discarded the box of silverware on a driveway when Sturiale began chasing him, Frye's credit/debit card was retrieved from defendant's front pocket and the police found other items, including the cuff links and dog tags, either on defendant's person or in the maroon pillow case in his possession at the time of his arrest. Given the proximity of defendant's activities that night to Frye's residence and the fact

that he was found with Frye's property on the same night that it was discovered to be missing, a reasonable inference could be drawn that defendant had burglarized Frye's home (*see e.g. People v Mangual*, 13 AD3d 734, 736 [2004], *lv denied* 4 NY3d 800 [2005]; *People v Potts*, 197 AD2d 801, 802 [1993], *lv denied* 82 NY2d 901 [1993]). Furthermore, the testimony of Sturiale that defendant was in possession of Frye's credit/debit card when he was apprehended was legally sufficient evidence to support the conviction of grand larceny in the fourth degree.

With regard to count seven, a person is guilty of criminal possession of stolen property when he knowingly possesses a stolen credit or debit card, with the intent to benefit himself or a person other than the owner thereof (*see* Penal Law § 165.45 [2]). A presumption that the defendant knew the card was stolen arises when such defendant is in possession of more than one stolen credit/debit card (*see* Penal Law § 165.55 [3]). Here, there was evidence that defendant was in possession of Frye's credit/debit card on the night that it was stolen from Frye's residence, as well as a credit card belonging to O'Keefe which had been stolen from O'Keefe's residence (*compare People v Bogdonawicz*, 59 AD2d 959 [1977]). Thus, viewing the evidence in a light most favorable to the People, we find that there existed a valid line of reasoning and permissible inferences to support the conclusion reached by the jury as to defendant's guilt of this charge.

We also reject defendant's contention that his convictions are against the weight of the evidence. While defendant denied that he had ever been at Frye's residence or stolen anything therefrom and testified that he found the various items that were in his possession when he was scavenging through trash and that he was not aware that the cards were credit cards (*compare People v Powers*, 262 AD2d 713, 715 [1999], *lv denied* 93 NY2d 1005 [1999]), the jury was free to reject defendant's testimony based on a determination of his credibility (*see People v Mangual*, 13 AD3d at 736). Although, "based on all the credible evidence a different finding would not have been unreasonable" (*People v Bleakley*, 69 NY2d at 495), viewing the evidence in a neutral light and giving "appropriate deference to the jury's superior opportunity to assess the witnesses' credibility" (*People v Gilliam*, 36 AD3d 1151, 1152-1153 [2007], *lv denied* 8 NY3d 946 [2007]; *see People v Griffin*, 26 AD3d 594, 596 [2006], *lv denied* 7 NY3d 756 [2006]), we find that "the jury was justified in finding the defendant guilty beyond a reasonable doubt" (*People v Danielson*, 9 NY3d 342, 348 [2007]; *see People v Romero*, 7 NY3d 633, 636 [2006]; *People v Bleakley*, 69 NY2d at 495; *People v Khuong Dinh Pham*, 31 AD3d 962, 964 [2006]).

We are also unpersuaded by defendant's contention that he was denied the effective assistance of counsel (*see generally People v Caban*, 5 NY3d 143, 152 [2005]; *People v Benevento*, 91 NY2d 708, 712 [1998]). Defendant failed to demonstrate that his counsel did not provide meaningful representation or an absence of "strategic or other legitimate explanation[ ]" for his failure to request a competency hearing (*People v Caban*, 5 NY3d at 152 [internal quotation marks and citation omitted]). The record demonstrates that defendant's attorney made appropriate motions, objections and requests for hearings and thoroughly cross-examined witnesses. Defendant's counsel was also successful in securing acquittals on counts one through four of the indictment.

To the extent that any further contentions have been raised, they are rejected.

Mercure, J.P., Spain, Carpinello and Malone Jr., JJ., concur. Ordered that the judgment is affirmed.

