The People of the State of New York, Respondent, v Jermayne Timmons, Also Known as Maine, Appellant. [910 NYS2d 290]—

McCarthy, J. Appeal from a judgment of the County Court of Albany County (Herrick, J.), rendered March 6, 2009, upon a verdict convicting defendant of the crime of murder in the second degree.

Defendant, who was 15 years old at the time, armed himself with a gun and, along with two neighborhood companions, rode his bike into another neighborhood in the City of Albany. He and his companions stopped at the intersection of First Street and Judson Street, where they saw three teenaged boys. After a brief "stare down," defendant pulled the gun out of his pocket and the three rival boys began running up First Street. Defendant then fired a shot up First Street, in the direction of the running boys. Seconds later, another unidentified group of boys returned fire, shooting approximately three times at defendant's companions as they fled down First Street while defendant fled on Judson Street. When defendant was at the intersection, the victim, a 10-year-old girl, was on the front steps of her home, located more than a block up First Street from the intersection. A bullet struck her, quickly causing her death.

Defendant was charged as a juvenile offender with intentional murder in the second degree, depraved indifference murder in the second degree, manslaughter in the first degree, manslaughter in the second degree and criminal possession of a weapon in the second degree. County Court denied his motion to dismiss one or both of the murder charges. At trial, the jury convicted defendant of depraved indifference murder in the second degree and criminal possession of a weapon in the second degree.* The court sentenced defendant as a juvenile offender to a prison term of 15 years to life. Defendant appeals.

County Court did not err in submitting both murder counts

---

* The conviction of criminal possession of a weapon—not a juvenile offender crime—was set aside and deemed a nullity based on defendant's conviction of murder in the second degree—a juvenile offender crime (*see* CPL 310.85 [1], [2]).

to the jury. While courts should not regularly permit the People to go forward on both intentional and depraved indifference murder as alternate theories, such twin counts may be submitted to the jury in rare instances (*see People v Suarez*, 6 NY3d 202, 215 [2005]; *People v Rollins*, 51 AD3d 1279, 1281 [2008], *lv denied* 11 NY3d 922 [2009]). This is one such instance. Defendant could have intended to murder one of the fleeing boys and been found guilty of intentional murder of the victim under a transferred intent theory, or he could have been found to have acted with depraved indifference by shooting a gun on a crowded street. As he could have possessed different mental states with regard to the different potential victims, the court did not err in letting the jury consider both murder counts in the alternative (*see People v Page*, 63 AD3d 506, 507-508 [2009], *lv denied* 13 NY3d 837 [2009]; *People v Hamilton*, 52 AD3d 227, 228 [2008], *lv denied* 11 NY3d 737 [2008]; *People v Craft*, 36 AD3d 1145, 1147-1148 [2007], *lv denied* 8 NY3d 945 [2007]).

Defendant's conviction is based upon legally sufficient evidence and is not against the weight of the evidence. Defendant contends that the People failed to prove the element of depraved indifference or that the fatal bullet came from defendant's gun. The Court of Appeals has stated that firing into a crowd and endangering innocent bystanders is a quintessential example of depraved indifference to human life (*see People v Payne*, 3 NY3d 266, 271-272 [2004]; *People v Russell*, 91 NY2d 280, 289-290 [1998]). In his written statement obtained by the police, defendant admitted possessing a loaded handgun and firing it on a residential street. He also acknowledged that he noticed "7 or 8 other people up First Street," including "an old lady up the street, a couple of other adults and a couple of kids." This testimony was supported by one of his companions, who testified that at the time of the shooting, there were "people everywhere, on the corner, on the street." This evidence was legally sufficient to demonstrate that defendant was aware of the presence of innocent people on the street but callously acted without any regard for their safety or the risk of death to those people when he fired a shot on the crowded street. Although defendant testified that he shot only because he thought one of the other boys was going to pull out a gun and he wanted to scare away the neighborhood rivals, the jury could choose not to accept that alleged justification.

The People sufficiently proved that the fatal shot was fired by defendant. A .45 caliber bullet was removed from the victim's body. A .45 caliber casing was recovered at the intersection where defendant admittedly fired a handgun. An expert testi-

fied that a .45 caliber bullet could travel up to a mile and, based on scientific testing, that the bullet recovered from the victim's body struck her at a velocity and trajectory consistent with a bullet traveling the approximately 1,060 feet from the intersection where defendant stood to the stoop where the victim was shot. Numerous witnesses testified that defendant was the only person to shoot up First Street—i.e., in the direction of the victim—and that the shots fired by other people were aimed down First Street. This evidence was legally sufficient to establish that defendant was the person who shot the victim. Defendant testified that the gun he possessed, which was never recovered after he disposed of it, was a .32 caliber revolver rather than a .45 caliber semi-automatic handgun like the weapon that killed the victim. In his statement to police, however, he identified the gun he shot as a semi-automatic. Testimony from other witnesses raised a possibility that the gun may have been a revolver or a different caliber, but that testimony was far from certain. Defendant also testified that he aimed at a boy diagonally on the corner, rather than directly up the street in the direction of the victim, and that he shot downward so that the bullet struck the ground. The jury was free to disbelieve this testimony, especially considering his conflicting testimony and in-court demonstration of how he held the gun, which would project the bullet straight from shoulder level rather than downward. Giving deference to the jury's credibility determinations, the verdict finding that defendant fired the fatal shot was not against the weight of the evidence (*see People v Parker*, 29 AD3d 1161, 1163 [2006], *affd* 7 NY3d 907 [2006]).

Defendant's argument concerning the admission of his apology notes to the victim's mother is unpreserved, as he did not object to their admission. Similarly, he did not object to most of the statements in the prosecutor's opening and summation. Considering the few statements for which his argument is preserved, reversal is not required because County Court sustained the objections or issued cautionary instructions to the jury in regard to some of the statements and the remainder were a fair response to the defense closing, fair comment on the evidence or not pervasive so as to necessitate a new trial (*see People v McCall*, 75 AD3d 999, 1002 [2010]).

County Court did not err in admitting four autopsy photos. The trial court has discretion to admit such photographs if they support a disputed or material issue or are used to illustrate a point to the jury; a court must deny admission only if the photos "are proffered solely to arouse the jury's emotions and preju-

dice the defendant" (*People v Ford*, 43 AD3d 571, 574 [2007], *lv denied* 9 NY3d 1033 [2008]). The photos here, which were not particularly gruesome, were used to show the trajectory of the bullet, the path it took through the victim's body and its reduced velocity. This information supported the testimony of the medical examiner regarding cause of death and the expert who testified regarding the bullet's velocity and trajectory in relation to where defendant fired a shot. While defendant asserts that he did not contest the cause of death, the photos were used for more than that purpose. In any event, the prosecution does not necessarily know, when presenting its case, what aspects of the proof a defendant will contest, and the People may reasonably present photographs to prove all material and possibly disputed issues relating to a defendant's guilt. Additionally, the court issued prompt instructions that the jury avoid emotion when viewing the exhibits (*see id.*). Thus, the court did not abuse its discretion in admitting the photos (*see People v Thibeault*, 73 AD3d 1237, 1243 [2010], *lv denied* 15 NY3d 810 [2010]).

Similarly, County Court did not err by permitting the People to elicit testimony from a detective on redirect concerning information in his investigative notes. This was not improper bolstering. Defendant opened the door to this testimony by implying on cross-examination that the detective fabricated his direct testimony regarding defendant's statements about the weapon he used. The People were then properly allowed to rehabilitate the detective's credibility by showing that he had made prior consistent statements (*see People v Seit*, 86 NY2d 92, 95-96 [1995]).

The sentence was not harsh or excessive. Although defendant was only 15 years old when the shooting occurred, he was on probation from Family Court at the time. As County Court noted, defendant was intelligent and had numerous resources offered to him, yet on the day in question he chose to skip school, smoke marihuana, arm himself with a handgun, ride with companions into a rival neighborhood looking for trouble, pull out his gun and shoot at boys who were running away from him despite seeing numerous people in the street. These brazen actions resulted in the senseless death of a young girl in front of her own home. Defendant admitted shooting a gun on a residential street, but continued to deny that his shot killed the victim. The maximum sentence was imposed not only to punish defendant for his callous actions, but to deter other young people from carrying weapons and shooting them indiscriminately.

Mercure, J.P., Malone Jr., Garry and Egan Jr., JJ., concur. Ordered that the judgment is affirmed.