Pritzker, J.
 

 Appeal from a judgment of the County Court of Clinton County (Ryan, J.), rendered May 5, 2015, upon a verdict convicting defendant of the crimes of criminal sale of a controlled substance in the third degree (three counts) and criminal possession of a controlled substance in the third degree (three counts).
 

 Following three drug transactions with two confidential informants (hereinafter the CIs), defendant was arrested and charged with three counts of criminal sale of a controlled substance in the third degree and three counts of criminal possession of a controlled substance in the third degree. After a jury trial, defendant was convicted of all counts and sentenced, as a second felony offender, to an aggregate prison term of 18 years followed by nine years of postrelease supervision. Defendant now appeals.
 

 Defendant contends that County Court erred in permitting the first Cl to identify him at trial, arguing that an unduly suggestive pretrial identification procedure tainted the Cl’s subsequent identification of defendant. As an initial matter, it appears from the record that County Court simultaneously conducted both Rodriguez and Wade hearings regarding the pretrial identification procedure. We agree with defendant that because Suzanne Ewing, an investigator who testified at the hearing, knew no specifics regarding the Cl’s prior encounters with defendant and did not specify the number of prior contacts that they had with one another, the People did not sufficiently prove, under the standard to be employed at a Rodriguez hearing, that the police procedure was confirmatory in nature (see People v Casanova, 119 AD3d 976, 980 [2014]; People v Coleman, 306 AD2d 549, 551 [2003]).
 

 Notwithstanding, a CPL 710.30 notice was filed in this case and a Wade hearing was also conducted (compare People v Casanova, 119 AD3d at 980; People v Coleman, 306 AD2d at 551), during which information establishing an independent basis for the first Cl’s in-court identification of defendant was revealed. Therefore, even though it was improper for Ewing to show the first Cl a single photograph of defendant prior to the second controlled buy, this Cl gave an accurate description of defendant shortly after the controlled buy on December 4, 2013, prior to being shown the photograph, thereby demonstrating the accuracy of his identification independent of any police procedure. Additionally, the first Cl was the individual who suggested defendant as the target of the controlled buy, thereby further demonstrating his familiarity with defendant. Moreover, the Cl had face-to-face contact with defendant during the controlled buys; therefore, the People established that the first Cl had an independent basis to identify defendant, untainted by the impermissible identification procedure and independent of any prior contacts with defendant (see People v Stevens, 87 AD3d 754, 756 [2011], lv denied 18 NY3d 861 [2011]; People v Hall, 57 AD3d 1222, 1224-1225 [2008], lv denied 12 NY3d 817 [2009]; People v Rockwell, 18 AD3d 969, 969-970 [2005], lv denied 5 NY3d 768 [2005]). We also find that, given the first Cl’s testimony regarding the controlled buys and his prior knowledge of defendant, the investigator’s corroboration of defendant’s identity as the supplier, testimony of the second Cl regarding her controlled buy and the in-court identification of defendant by the second Cl, the proof of defendant’s guilt was overwhelming and any error in admitting the first Cl’s identification of defendant was harmless (see People v Harris, 80 NY2d 796, 798 [1992]; People v Hall, 57 AD3d at 1225).
 

 Defendant also argues that County Court erred in permitting the People to introduce a private Facebook message in which he made a threat to the second Cl, claiming a lack of foundation. “A recorded conversation—such as a printed copy of the content of a set of cell phone instant messages—may be authenticated through, among other methods, the ‘testimony of a participant in the conversation that it is a complete and accurate reproduction of the conversation and has not been altered’ ” (Matter of Colby II. [Sheba II.], 145 AD3d 1271, 1273 [2016], quoting People v Agudelo, 96 AD3d 611, 611 [2012], lv denied 20 NY3d 1095 [2013]). “The credibility of the authenticating witness and any motive [he or] she may have had to alter the evidence go to the weight to be accorded this evidence, rather than its admissibility” (People v Agudelo, 96 AD3d at 611 [citation omitted]). Here, the second Cl had been Facebook friends with defendant for two years prior to trial and stated that she knew the message came from defendant’s account because an icon of defendant’s picture was displayed next to it. She also testified that she had firsthand knowledge of the content of the Facebook message, therefore, she was an appropriate witness to authenticate the message (see id. at 612). Additionally, the Facebook message was sufficiently authenticated by the second Cl as she explained that the copy shown to her—the same copy that was ultimately admitted as an exhibit at trial—accurately depicted the message that defendant had sent to her (see Matter of Colby II. [Sheba II.], 145 AD3d at 1273).
 

 Defendant further argues that the content of the Facebook message was inadmissible Molineux evidence. Although the message does constitute evidence of prior bad acts (see People v Washington, 306 AD2d 701, 702 [2003], lv denied 100 NY2d 600 [2003]; People v Maddox, 272 AD2d 884, 885 [2000], lv denied 95 NY2d 867 [2000]), the message is probative of defendant’s identity and of his consciousness of guilt (see People v McCommons, 143 AD3d 1150, 1154 [2016], lv denied 29 NY3d 999 [2017]; People v Peele, 73 AD3d 1219, 1221 [2010], lv denied 15 NY3d 894 [2010]). However, the record reflects that County Court failed to engage in an analysis of whether the probative value of such evidence outweighed its potential for undue prejudice (see People v Lindsey, 75 AD3d 906, 908 [2010], lv denied 15 NY3d 922 [2010]; People v Wright, 5 AD3d 873, 876 [2004], lv denied 3 NY3d 651 [2004]). Nonetheless, because the evidence against defendant was overwhelming, this error was harmless (see People v Kalina, 149 AD3d 1264, 1267 [2017], lv denied 29 NY3d 1092 [2017]; People v Scaringe, 137 AD3d 1409, 1417-1418 [2016], lv denied 28 NY3d 936 [2016]).
 

 As to defendant’s contention that County Court erred in failing to give a limiting instruction regarding the proper use of this evidence and that he was denied a fair trial as a result thereof, this issue is unpreserved for review as defendant never requested such an instruction (see People v Reynoso-Fabian, 134 AD3d 1141, 1146 [2015]; People v Williams, 25 AD3d 875, 876 [2006], lv denied 6 NY3d 854 [2006]). In any event, a limiting instruction was unnecessary here “since the threat was directly attributable to defendant” (People v Williams, 25 AD3d at 876; see People v King, 175 AD2d 266, 266 [1991], lv denied 79 NY2d 828 [1991]). Because a limiting instruction was unnecessary under the circumstances—and defense counsel made pretrial motions, effectively cross-examined the People’s witnesses, made appropriate objections, and advocated for defendant during summation—defendant was provided with meaningful representation and, accordingly, defendant’s ineffective assistance of counsel claim arising from counsel’s failure to request a limiting instruction as to the proper use of the Facebook message must fail (see People v Van Demps, 118 AD3d 1146, 1148 [2014], lv denied 23 NY3d 1061 [2014]; People v Jones, 101 AD3d 1241, 1242-1243 [2012], lv denied 21 NY3d 944 [2013]).
 

 Despite conceding that he failed to object, and therefore preserve this issue, defendant also contends that the People elicited testimony that improperly bolstered and vouched for the CIs (see People v Rivera, 31 AD3d 1060, 1061 [2006], lv denied 7 NY3d 869 [2006]). Were this issue before us we would find that this testimony, from investigators on redirect, did not constitute improper bolstering because defendant opened the door to such testimony by challenging the credibility of those witnesses on cross-examination (see People v Allah, 57 AD3d 1115, 1118 [2008], lv denied 12 NY3d 780 [2009]; People v Timmons, 78 AD3d 1241, 1245 [2010], lv denied 16 NY3d 837 [2011]). Moreover, had it been improper bolstering to elicit testimony from Ewing confirming that the CIs had identified defendant from photographs (see People v LaDuke, 140 AD3d 1467, 1470-1471 [2016]), any error in this respect would be harmless given the unequivocal in-court identification of defendant by the CIs and the overwhelming proof of defendant’s guilt (see id. at 1471; People v Rivera, 31 AD3d 1060, 1061 [2006], lv denied 7 NY3d 869 [2006]). Given that any errors in this regard were harmless, defendant’s related ineffective assistance of counsel claim arising from defense counsel’s failure to object to such testimony must fail because defendant was not deprived of meaningful representation as a result thereof.
 

 Defendant also contends that County Court abused its discretion in permitting two jurors to continue serving on the jury. Specifically, these jurors revealed, after the trial had already commenced, that they knew the second CL Defendant claims that County Court erred in denying his motion for a mistrial or to dismiss these two jurors. Initially, although defendant did not explicitly invoke the provisions of CPL 270.35 or mention the “grossly unqualified” standard in moving for a mistrial or to remove the jurors from the jury panel, this issue is properly preserved for our review, as the People concede, because County Court engaged in an inquiry into whether any recognition of the second Cl would render these two jurors not impartial. Turning to the merits, County Court engaged in a probing and tactful colloquy as to whether these jurors could be impartial (see People v Lancaster, 143 AD3d 1046, 1051 [2016], lv denied 28 NY3d 1147 [2017]). Although juror No. 3 revealed that the second Cl had previously provided babysitting services to her, she clarified that the second Cl had not engaged in such services for over seven years. Furthermore, even though this juror is friends with the second Cl’s mother, she unequivocally and consistently reiterated that her connection with the second Cl would not impact her ability to serve on the jury and that she was able to render a decision based solely on the evidence. The relationship between juror No. 10 and the second Cl is even more attenuated, as they merely attended the same high school but were neither in the same graduating class nor interacted with each other. This juror similarly assured County Court that his casual acquaintance with the second Cl would not impact his ability to serve as a juror. Accordingly, juror No. 10 was not grossly unqualified to continue serving on the jury. Consequently, under the circumstances, County Court properly denied defendant’s motion for a mistrial or to discharge both jurors from the jury panel (see CPL 270.35 [1]; People v Lancaster, 143 AD3d at 1051; People v Colburn, 123 AD3d at 1294-1295; People v Peele, 73 AD3d at 1220).
 

 Finally, defendant claims that his sentence was harsh and excessive. Initially, we note that defendant faced up to 36 years in prison as a second felony offender. Further, given defendant’s lengthy criminal history and the fact that he engaged in multiple drug sales with two different individuals, we find no abuse of discretion on the part of County Court or any extraordinary circumstances that warrant a reduction of the sentence in the interest of justice (see People v Cooley, 149 AD3d 1268, 1271 [2017], lv denied 30 NY3d 979 [2017]; People v McGowan, 149 AD3d 1161, 1163 [2017], lv denied 29 NY3d 999 [2017]; People v Abare, 86 AD3d 803, 806 [2011], lv denied 19 NY3d 861 [2012]).
 

 Peters, P.J., Garry, Mulvey and Aarons, JJ., concur.
 

 Ordered that the judgment is affirmed.