People v Williams (2018 NY Slip Op 05227)





People v Williams


2018 NY Slip Op 05227


Decided on July 12, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 12, 2018

108026

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
NAQUAN S. WILLIAMS, Also Known as CROME, Appellant.

Calendar Date: May 29, 2018

Before: Garry, P.J., McCarthy, Clark, Rumsey and Pritzker, JJ.


Stephen W. Herrick, Public Defender, Albany (Jessica M. Gorman of counsel), for appellant.
P. David Soares, District Attorney, Albany (Emily A. Schultz of counsel), for respondent.



MEMORANDUM AND ORDER
Garry, P.J.
Appeals (1) from a judgment of the Supreme Court (Breslin, J.), rendered April 3, 2015 in Albany County, upon a verdict convicting defendant of the crime of criminal sale of a controlled substance in the third degree, and (2) by permission, from an order of said court, entered December 9, 2016 in Albany County, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.
Defendant was charged with criminal sale of a controlled substance in the third degree after a controlled transaction in which he sold crack cocaine to a confidential informant (hereinafter CI). He rejected a plea bargain that would have required him to plead guilty to attempted criminal sale of a controlled substance in the third degree in exchange for a sentence of two years in prison followed by three years of postrelease supervision. Later, he accepted a second agreement by which he pleaded guilty to the same offense in exchange for a prison term of four years followed by three years of postrelease supervision. He subsequently withdrew his guilty plea. Following a jury trial, defendant was convicted as charged and sentenced to a prison term of 14 years followed by three years of postrelease supervision. Thereafter, acting pro se, he filed a CPL 440.10 motion seeking to vacate the judgment of conviction, which Supreme Court [*2]denied without a hearing. Defendant appeals from the judgment of conviction and, by permission, from the order denying his CPL 440.10 motion.
Defendant contends that the verdict was not supported by legally sufficient evidence and was against the weight of the evidence in that the People failed to prove his identity as the seller. The legal insufficiency claim is unpreserved, as defendant's motion for a trial order of dismissal was not specifically based upon the identification issue (see People v Gray, 86 NY2d 10, 19 [1995]; People v Green, 141 AD3d 1036, 1037 [2016], lv denied 28 NY3d 1072 [2016]). Nevertheless, defendant's challenge to the weight of the evidence requires this Court to determine whether each element of the charged crime was proven beyond a reasonable doubt (see People v Danielson, 9 NY3d 342, 348-349 [2007]; People v Scippio, 144 AD3d 1184, 1185 [2016], lv denied 28 NY3d 1150 [2017]).
At trial, a detective of the City of Albany Police Department (hereinafter the detective) testified that he met with the CI before the transaction and searched him to ensure that he was not carrying contraband. The CI then placed a telephone call to a person whom he called Crome, followed by an exchange of text messages. The detective listened to the telephone call and testified that he recognized the speaker's voice as that of defendant, whom he had met on several previous occasions. The detective then drove the CI to a spot near the prearranged location, equipped him with a digital recording device and gave him cash for the purchase. A second detective testified that he watched the CI constantly for about 20 minutes while he waited for defendant's arrival, and that the CI did not interact with anyone during this period. A vehicle that the detective described as "a gold Volvo XE 90 with chrome rims" then arrived at the designated location, and the CI got into the car briefly. The detective recognized the driver as defendant, and he also recognized the Volvo, having made a previous traffic stop in which defendant was driving that vehicle. He was located about 37 yards away. Although the transaction took place after sunset, he testified that the Volvo was parked directly under a street light, making it possible for him to see defendant's features clearly through the vehicle's windows. He identified defendant in court as the person who was driving the Volvo, and stated that there was no one else in the car.
After the transaction, the CI returned to the detective's vehicle and handed over a substance that proved to be crack cocaine. A second search of his person revealed no contraband. Defendant was driving a different vehicle when he was arrested some eight months later, but the detective testified that the car contained paperwork from a Volvo dealership referencing the Volvo and including defendant's name. A third detective who did not participate in the controlled transaction testified that he later listened to an audio recording of the transaction and recognized the seller's voice as that of defendant, whom he had known since the mid-1990s and with whom he had previously interacted 50 to 100 times. He stated that defendant's voice was distinctive and identified him in court.
The CI's testimony about the transaction was consistent with that of the detectives. He stated that he had known defendant only as Crome until he learned defendant's name from police when he identified his photograph shortly before the transaction. He knew defendant's phone number because he had used it to contact him on previous occasions. He described the vehicle where the transaction occurred as a "jeep Volvo," acknowledged that he had previously described it only as a "jeep" and stated that he was familiar with the vehicle because he had been in it "many times." He identified defendant in court as the person whom he had formerly known as Crome and from whom he had bought drugs in the controlled transaction.
The CI testified that he had agreed to engage in the transaction because he "had two sales [himself]" and that he had received a favorable sentence in exchange for his cooperation. On cross-examination, he acknowledged that he was at risk of being sentenced as a persistent felon if he had not cooperated with police, that he had violated the terms of his contract by continuing to sell drugs while working as a CI and that police had nevertheless permitted him to continue to work for them. He also stated on cross-examination that he had obtained the drugs that he sold in the other transactions from defendant, and he added on redirect that he had purchased drugs from defendant "a lot of times." Finally, the CI described an incident in which a private investigator had visited him while he was incarcerated and had tried unsuccessfully to persuade him to sign an affidavit stating that he had bought the drugs in the controlled transaction from someone other than defendant.
Defendant asserts that the detective's identification is unreliable because of the dark and distance, and further, that the identification testimony of the other witnesses is unworthy of belief. If the jury had accepted these arguments, a different verdict would not have been unreasonable. Thus, this Court must "weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" to determine whether the jury gave the evidence the weight that it should have been accorded (People v Scippio, 144 AD3d at 1185 [internal quotation marks and citations omitted]; accord People v Cruz, 152 AD3d 822, 823 [2017], lv denied 30 NY3d 1018 [2017]). Upon our review, deferring to the jury's credibility assessments and viewing the evidence in a neutral light, we are persuaded that the verdict is supported by the weight of the evidence (see People v Scott, 129 AD3d 1306, 1307 [2015], lvs denied 26 NY3d 1089, 1092 [2015]; People v Watkins, 121 AD3d 1425, 1426 [2014], lvs denied 24 NY3d 1123, 1124 [2015]).
We reject defendant's contention that the identification evidence should not have been admitted in the absence of a Rodriguez hearing to test the witnesses' claims of prior familiarity with defendant. Defendant requested a Rodriguez hearing for the first time on the first day of trial. Supreme Court was authorized to summarily deny this untimely request, and, as defendant made no showing of good cause for the delay, the court did not abuse its discretion in declining to entertain the motion (see CPL 255.20 [1], [3]; see generally People v Jackson, 48 AD3d 891, 893 [2008], lv denied 10 NY3d 841 [2008]; People v Sheremet, 41 AD3d 1038, 1039-1040 [2007], lv denied 9 NY3d 881 [2007]).
Defendant next contends that he was denied a fair trial by Supreme Court's admission of alleged improper testimony. Initially, we reject the claim that the detective's testimony about his previous contacts with defendant was inadmissible. Contrary to defendant's assertion, no Molineux hearing was required, as the challenged testimony did not describe any uncharged crimes or bad acts; the detective merely stated that he had encountered defendant on several occasions before the controlled transaction, without mention of arrests or other crime-related conduct. Even if, as defendant suggests, the testimony was prejudicial because the jury could have inferred that defendant had been involved in other criminal activity, the detective's testimony provided necessary background information explaining his ability to identify defendant (see People v McCommons, 143 AD3d 1150, 1153 [2016], lvs denied 29 NY3d 999, 1001 [2017]). Supreme Court cured any prejudice with an appropriate limiting instruction, which the jury is presumed to have followed (see People v Vanderhorst, 117 AD3d 1197, 1200 [2014], lv denied 24 NY3d 1089 [2014]). For similar reasons, we find no error in the court's admission of the CI's testimony that he had called and texted defendant on other occasions before the [*3]controlled transaction.[FN1]
Defense counsel elicited the first testimony from the CI relative to other drug purchases from defendant; counsel asked how many people he had bought drugs from while he was under contract with the police to act as a CI. We agree with Supreme Court that this questioning — which the CI answered by testifying that he had bought drugs from defendant and one other person — opened the door for the People to make further inquiry (see People v Smith, 157 AD3d 978, 980-981 [2018]). We note that the court permitted the People to ask only one question on this subject, sustained defendant's objection to additional questioning and promptly instructed the jury not to consider the testimony as evidence of a propensity to commit crime.
Defendant failed to preserve his appellate claim that the third detective's testimony about recognizing defendant's voice on the audio recording was improper bolstering, as he made no objection on that ground at trial (see People v Hughes, 114 AD3d 1021, 1023 [2014], lv denied 23 NY3d 1038 [2014]). To the extent that he also argues that the third detective's testimony about his many previous encounters with defendant was improperly prejudicial, Supreme Court did not err in overruling defendant's Molineux objection. As with the first detective, the challenged testimony provided background information explaining the third detective's ability to identify defendant's voice, and there was no reference to any crimes or bad acts. Even if we were to find that this testimony was improperly admitted, we would nonetheless find the error to be harmless, as the evidence against defendant was overwhelming (see People v Shortell, 155 AD3d 1442, 1444-1445 [2017], lv denied ___ NY3d ___ [May 16, 2018]; People v Kalina, 149 AD3d 1264, 1267 [2017], lv denied 29 NY3d 1092 [2017]).
Defendant's objection that the detective was improperly allowed to give hearsay testimony was unpreserved. Certain other testimony to which he now objects was stricken upon his objection. We have examined his remaining evidentiary objections and found them to be without merit.
We likewise reject defendant's contention that he was denied a fair trial by improper remarks during the prosecutor's summation. To the extent that defendant's appellate claims are preserved (see CPL 470.05 [2]; People v Stanford, 130 AD3d 1306, 1309 [2015], lv denied 26 NY3d 1043 [2015]), most of the challenged statements were responsive to defense counsel's sharply critical remarks in summation about the credibility of the People's witnesses, or were "fair comment on the evidence and the reasonable inferences to be drawn therefrom" (People v Head, 90 AD3d 1157, 1158 [2011]; see People v Cherry, 46 AD3d 1234, 1237-1238 [2007], lv denied 10 NY3d 839 [2008]). Supreme Court sustained several of defendant's objections and gave limiting instructions where appropriate, and we find nothing in the summation that was so prejudicial as to deny defendant's right to a fair trial (see People v Thomas, 155 AD3d 1120, 1123-1124 [2017]; People v Ressy, 141 AD3d 839, 843 [2016], lv denied 28 NY3d 1030 [2016]).
By not raising it at sentencing, defendant failed to preserve his claim that his sentence was imposed in retaliation for exercising his constitutional right to trial (see People v Hurley, 75 NY2d 887, 888 [1990]; People v Haskins, 121 AD3d 1181, 1185 [2014], lv denied 24 NY3d 1120 [2015]). In any event, the fact that a sentence imposed after trial is longer than one offered in plea negotiations does not establish vindictiveness where, as here, nothing else in the record supports defendant's claim (see People v Massey, 45 AD3d 1044, 1048 [2007], lv denied 9 NY3d 1036 [2016]). Supreme Court declined the People's request to sentence defendant as a persistent felon, and the sentence imposed was less than the potential maximum (see Penal Law § 70.70 [4] [b] [i]). In view of defendant's lengthy criminal record — which includes a prior violent felony conviction — and his failure to accept responsibility for his actions, we do not find that defendant's sentence is harsh or excessive (see People v Dowling, 75 AD3d 838, 841 [2010]).
We note, however, that although Supreme Court referred to defendant at sentencing as a second felony offender, the record establishes that he was in fact sentenced as a second felony drug offender with a violent predicate felony (compare Penal Law § 70.06 [3] [b]; [4] [b], with Penal Law § 70.70 [4] [b] [i]). The uniform sentence and commitment form and the certificate of conviction must be amended accordingly (see People v Williams, 145 AD3d 1188, 1191 [2016], lv denied 29 NY3d 1002 [2017]; People v Labaff, 127 AD3d 1471, 1472 [2015], lv denied 26 NY3d 931 [2015]; People v Feliciano, 108 AD3d 880, 880 n 1 [2013], lv denied 22 NY3d 1040 [2013]).
Turning to the denial of defendant's CPL 440.10 motion, defendant contends that the People committed a Brady violation by failing to disclose that the CI had been arrested and charged in 2000 with rape in the first degree and endangering the welfare of a child, that the charges were later reduced to sexual assault, and that the CI was prosecuted by the Albany County District Attorney's office. Defendant failed to submit documentation that he claimed would establish this claim. However, even assuming that his assertions were sufficient to establish a Brady violation, the CI acknowledged that he had previously been convicted of several other crimes and that he was working off new drug sale charges at the time of the controlled transaction. He was cross-examined on these issues, and his testimony describing the controlled transaction was consistent with that of the People's other witnesses. For these reasons, we agree with Supreme Court that there is no reasonable possibility that the nondisclosure contributed to the verdict (see People v Pressley, 91 NY2d 825, 827 [1997]; People v Benloss, 117 AD3d 1071, 1072 [2014], lv denied 23 NY3d 1059 [2014]; People v Griffin, 48 AD3d 894, 895-896 [2008], lv denied 10 NY3d 959 [2008]). Accordingly, the motion was properly denied.
McCarthy, Clark, Rumsey and Pritzker, JJ., concur.
ORDERED that the judgment and order are affirmed, and matter remitted for entry of an amended uniform sentence and commitment form and an amended certificate of conviction.



Footnotes

Footnote 1:Defendant did not object to Supreme Court's limiting instruction about the CI's testimony when it was given; accordingly, his appellate claim that the instruction was itself prejudicial is unpreserved (see People v Irby, 140 AD3d 1319, 1323 [2016], lv denied 28 NY3d 931 [2016]).