People v Serrano (2019 NY Slip Op 05026)

BODY {
font-family : "Times New Roman", Times, serif;
font-size : larger;
}

P {
line-height: 150%;
text-indent: 2em
}

People v Serrano

2019 NY Slip Op 05026

Decided on June 20, 2019

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: June 20, 2019

109763

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
vCARLOS SERRANO, Also Known as CARLOS SERRANO VALENTIN, Appellant.

Calendar Date: April 30, 2019
Before: Garry, P.J., Clark, Mulvey, Devine and Pritzker, JJ.


Paul J. Connolly, Delmar, for appellant.
James R. Farrell, District Attorney, Monticello, for respondent.

MEMORANDUM AND ORDER
Mulvey, J.
Appeal from a judgment of the Supreme Court (Schick, J.), rendered May 19, 2017 in Sullivan County, upon a verdict convicting defendant of the crimes of murder in the second degree, criminal possession of a weapon in the second degree and reckless endangerment in the first degree.
The victim, who was the paramour of defendant's estranged wife, was fatally shot while present, along with others, on the front porch of the multifamily residence where the wife lived. In relation to the shooting, defendant was convicted of murder in the second degree, criminal possession of a weapon in the second degree and reckless endangerment in the first degree. Supreme Court sentenced him to the maximum permissible prison terms for all three crimes — 25 years to life for murder in the second degree, 15 years for criminal possession of a weapon in the second degree, to be followed by five years of postrelease supervision, and 2⅓ to 7 years for reckless endangerment in the first degree — but ran the sentences concurrently. Defendant appeals.
The verdict is not against the weight of the evidence. "A weight of the evidence analysis requires us to first determine, based on all of the credible evidence, whether a different result would have been unreasonable and, if not, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (People v Guzy, 167 AD3d 1230, 1232 [2018] [internal quotation marks, brackets and citations omitted], lv denied 33 NY3d 948 [2019]). Defendant limits his challenge to the alleged lack of evidence of his identity as the perpetrator and as to his mental state for reckless endangerment. Regarding his identity, two eyewitnesses who knew defendant identified him in court as the shooter. One was his wife, who viewed the incident from a window facing the porch, and the other was a neighbor, who had lived in the same building with defendant for several months and was on the porch at the time of the shooting. Another witness, who was also on the porch at the time but did not previously know defendant and could not identify him in [*2]court, described the shooter's height, build, ethnicity, clothing and neck tattoo, which were consistent with defendant's appearance. All three of these eyewitnesses also testified that the shooter asked the victim whether the shooter's wife and baby were inside; defendant was apparently the only person who had a wife and baby inside the building. Although defendant attacks the credibility of these witnesses and their ability to accurately see the incident, we defer to the jury's credibility determinations (see People v Stahli, 159 AD3d 1055, 1057 [2018], lv denied 31 NY3d 1088 [2018]). In addition to other evidence linking defendant to the shooting, the testimony of these three eyewitnesses established that defendant was the perpetrator of the charged crimes.
As for defendant's other challenge to the weight of the evidence, "[a] person is guilty of reckless endangerment in the first degree when, under circumstances evincing a depraved indifference to human life, he [or she] recklessly engages in conduct which creates a grave risk of death to another person" (Penal Law § 120.25). Thus, to prove the requisite mens rea, the People must show both recklessness creating a grave risk of death and a depraved indifference to human life (see People v Feingold, 7 NY3d 288, 293-294 [2006]). "Depraved indifference is, simply put, 'an utter disregard for the value of human life'" (People v Stahli, 159 AD3d at 1057, quoting People v Suarez, 6 NY3d 202, 214 [2005]; see People v Warrington, 146 AD3d 1233, 1237 [2017], lv denied 29 NY3d 1038 [2017]), and a person is said to act recklessly "when he [or she] is aware of and consciously disregards a substantial and unjustifiable risk that" a specified result will occur, where that risk is "of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation" (Penal Law § 15.05 [3]).
Although "the firing of a gun, without more, is insufficient to support a reckless endangerment conviction" (People v Durham, 146 AD3d 1070, 1073 [2017], lv denied 29 NY3d 997 [2017]), defendant shot at the victim while the victim was on an 8-foot by 10-foot porch with three other people. Opening fire on the porch of a multifamily residence where multiple individuals, including a young child, were gathered, evinced an utter disregard for human life and recklessly created a grave risk of death to those individuals, which is particularly evident from testimony that the victim, who was struck by three bullets, had to physically move the young child — who was behind him — out of the line of fire (see id. at 1073-1074; People v Payne, 71 AD3d 1289, 1291-1292 [2010], lv denied 15 NY3d 777 [2010]; People v Wright, 22 AD3d 873, 875-876 [2005], lvs denied 6 NY3d 755, 761 [2005]; compare People v Stanley, 108 AD3d 1129, 1131 [2013], lv denied 22 NY3d 959 [2013]; People v Thompson, 75 AD3d 760, 762 [2010], lvs denied 15 NY3d 893, 894, 896 [2010]). Accordingly, the verdict is not against the weight of the evidence.
Supreme Court properly denied defendant's motion to preclude the neighbor's in-court identification of defendant. The People must initially establish that the police conduct was reasonable and that the photo array lacks any undue suggestiveness, but "the defendant . . . bears the ultimate burden of proving that the pretrial identification procedure was unduly suggestive" (People v Quintana, 159 AD3d 1122, 1126 [2018] [internal quotation marks and citation omitted], lv denied 31 NY3d 1086 [2018]; see People v Chipp, 75 NY2d 327, 335 [1990], cert denied 498 US 833 [1990]). "A photo array is unduly suggestive if some feature or characteristic of one of the depicted individuals or photographs is so unique or distinctive that it draws the viewer's attention to that photograph, thereby indicating that the police have selected that particular individual" (People v Marryshow, 162 AD3d 1313, 1313 [2018] [citations omitted]; see People v Cole, 150 AD3d 1476, 1477 [2017], lv denied 31 NY3d 1146 [2018]). "While the physical characteristics of all the people included in an array must be similar, so that the viewer's attention is not particularly drawn to the defendant, there is no requirement that the defendant be surrounded by people nearly identical in appearance" (People v Cole, 150 AD3d at 1477-1478 [internal quotation marks, brackets and citations omitted]; see People v Chipp, 75 NY2d at 336; People v Lanier, 130 AD3d 1310, 1312 [2015], lv denied 26 NY3d 1009 [2015]).
Defendant does not challenge the double-blind procedure used to obtain the pretrial identification. Rather, he argues that the photo array shown to the neighbor was unduly suggestive because in his photo he is wearing orange and he was the only individual that had a [*3]tattoo with lettering on the front of the neck. The photo array depicts six males who all appear to be of the same general age and have similar hair length and styles, eye color and shape, facial hair and facial expressions. The backgrounds are neutral and the individuals are all facing forward. Two men are wearing white tops, two are wearing black and two — including defendant — are wearing either orange or red. All six men have distinctive neck tattoos. Although defendant is the only individual with lettering or a word tattooed by itself on the front of his neck, one man has lettering on the side of his neck and another has words within a drawing on the front of his neck. Under these circumstances, nothing about defendant's tattoo was likely to unduly draw the viewer's attention to his photo or indicate that he was the perpetrator of the charged crimes (see People v Flores, 102 AD3d 707, 707 [2013], lv denied 21 NY3d 942 [2013]; see also People v Quintana, 159 AD3d at 1127). The shirt color would not link defendant to the crimes — indeed, the witnesses testified that the shooter was wearing a black shirt — and it is not discernable from the photos whether either of the men in orange or red is wearing a "jail jumpsuit," as defendant contends (see People v Thomas, 164 AD3d 619, 621 [2018], lvs denied 32 NY3d 1068 [2018]; People v Plumley, 111 AD3d 1418, 1420 [2013], lv denied 22 NY3d 1140 [2014]). Moreover, there is no indication in the record that the neighbor relied on the clothing of the perpetrator in making her identification, which she made quickly and without hesitation (see People v Smart, 142 AD3d 513, 514 [2016], affd 29 NY3d 1098 [2017]; People v Lee, 30 AD3d 760, 762 [2006], lv denied 7 NY3d 850 [2006]; People v Mattocks, 133 AD2d 89, 90 [1987], lv denied 70 NY2d 801 [1987]). As nothing impermissibly draws attention to defendant's photo, we agree with Supreme Court that defendant failed to meet his burden of demonstrating that the photo array was unduly suggestive.
Supreme Court did not err in determining that the People established a proper foundation for evidence of the wife's electronic communications with defendant. "A recorded conversation — such as a printed copy of the content of a set of cell phone instant messages — may be authenticated through, among other methods, the testimony of a participant in the conversation that it is a complete and accurate reproduction of the conversation and has not been altered" (People v Shortell, 155 AD3d 1442, 1444 [2017] [internal quotation marks and citations omitted], lv denied 31 NY3d 1087 [2018]; see People v Hughes, 114 AD3d 1021, 1023 [2014], lv denied 23 NY3d 1038 [2014]). The wife's testimony established her phone number, defendant's phone number and defendant's Facebook account. Defendant's girlfriend also testified as to defendant's phone number. While he was in police custody, defendant asked for his cell phone and advised the police that it was in a certain vehicle, where a police officer located the phone at issue. Data recovered from that phone included a photo used as the profile picture for defendant's Facebook account, as well as text messages and private Facebook messages between defendant and his wife. The wife testified regarding the accuracy of those messages (see People v Agudelo, 96 AD3d 611, 611-612 [2012], lv denied 20 NY3d 1095 [2013]). The credibility of the authenticating witness goes to the weight to be accorded the evidence, not to its admissibility (see id. at 611). Defendant's argument that someone else could have sent messages from his phone, which presented a factual issue for the jury to resolve (see People v Hughes, 114 AD3d at 1023; People v Clevenstine, 68 AD3d 1448, 1451 [2009], lv denied 14 NY3d 799 [2010]), was belied by testimony from a computer forensic technician explaining that it was extremely difficult to obtain access to defendant's phone because it was locked with a pass code. Thus, the People laid an adequate foundation for admission of the subject electronic communications (see People v Shortell, 155 AD3d at 1444; People v Hughes, 114 AD3d at 1023; People v Clevenstine, 68 AD3d at 1450-1451).
Supreme Court did not abuse its discretion in admitting two photographs showing the bullet wounds in the victim's body. "The general rule with respect to photographs of a victim's deceased body is that they are admissible if they tend to prove or disprove a disputed or material issue, to illustrate or elucidate other relevant evidence, or to corroborate or disprove some other evidence offered and should be excluded only if their sole purpose is to arouse the emotions of the jury and to prejudice the defendant" (People v Poulin, 159 AD3d 1049, 1051-1052 [2018] [internal quotations marks, ellipsis, brackets and citations omitted], lv denied 32 NY3d 940 [2018]; see People v Molineaux, 156 AD3d 1250, 1252 [2017], lv denied 31 NY3d 1085 [2018]). After Supreme Court found that a picture of the deceased victim on the ground with his [*4]eyes open and blood around his head was "horrible" and "gory," the People agreed to crop the proffered exhibit to show only the victim's torso, in a manner that is not gruesome. Two pictures were used because it was impossible to include all three bullet wounds in one photo, considering that one bullet entered the chest and the others entered the flank and buttocks. Although defendant did not contest the cause of death, the photos were relevant [FN1] to the material issue of intent to commit murder, and the People could rely on them despite the existence of other evidence as to that element (see People v Alvarez, 38 AD3d 930, 931-932 [2007], lv denied 8 NY3d 981 [2007])[FN2]. The court did not instruct the jury to avoid emotions when viewing the photos (compare People v Francis, 83 AD3d 1119, 1122 [2011], lv denied 17 NY3d 806 [2011]; People v Timmons, 78 AD3d 1241, 1244-1245 [2010], lvs denied 16 NY3d 833, 837 [2011]), but no limiting instructions were requested. As the sole purpose was not to arouse the jury's emotions or prejudice defendant, Supreme Court did not abuse its discretion in admitting the photos (see People v Greenfield, 167 AD3d 1060, 1063 [2018], lv denied 32 NY3d 1204 [2019]).
We have reviewed defendant's remaining arguments and find them unavailing.
Garry, P.J., Clark, Devine and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed.
Footnotes

Footnote 1: Defendant did not dispute the relevancy of the photos but argued that their prejudicial nature outweighed their probative value.

Footnote 2: Although the People primarily relied on the intent element of the murder charge in their argument in Supreme Court to admit the photos, they also mentioned that the photos corroborated eyewitness testimony that defendant was initially shot from the front and was then shot in the back while moving the child out of harm's way. Thus, the photos were also relevant to prove elements of reckless endangerment.